UNITED STATES, Appellee,

v.

Alvin R. HART, Specialist Five,
U.S. Army, Appellant.

No. 54,607.
CM 446622.

U.S. Court of Military Appeals.

Sept. 30, 1987.

For Appellant: *Captain James J. McGroary* (argued); *Major Marion E. Winter* and *Major Joel D. Miller* (on brief); *Colonel Brooks B. LaGrua, Lieutenant Colonel Arthur L. Hunt, Captain Carolyn F. Washington.*

For Appellee: *Captain Thomas L. Herrington* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Larry D. Williams* and *Lieutenant Colonel Gary F. Roberson* (on brief); *Colonel James Kucera.*

*Opinion of the Court*

SULLIVAN, Judge:

In June and July 1984 appellant was tried at Fort Hood, Texas, by a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of kidnapping for the purpose of taking indecent liberties, taking indecent liberties with a child, and assault with intent to rape, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. Appellant was sentenced to a dishonorable discharge, 30 years' confinement, total forfeitures, and reduction to the lowest enlisted grade. The convening au-

thority approved, and the Court of Military Review affirmed, these results.

We granted appellant's petition for review to consider the following issue raised by appellate defense counsel:

WHETHER THE EVIDENCE WAS SUFFICIENT AS A MATTER OF LAW TO ESTABLISH APPELLANT'S GUILT TO SPECIFICATIONS 1 AND 2 OF CHARGE II AND THE SPECIFICATION OF ADDITIONAL CHARGE III.

We hold that the evidence was sufficient for a rational factfinder to find beyond a reasonable doubt that these offenses occurred and appellant committed them. Accordingly, the findings of guilty may stand. *See generally Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d. 560 (1979); *United States v. Ford*, 23 M.J. 331 (C.M.A.1987); *United States v. Harper*, 22 M.J. 157 (C.M.A.1986).

Mrs. Denise Richardson was a military dependent residing in the Comanche III A housing area of Fort Hood, Texas. She testified that, at approximately 9 p.m. on April 12, 1984, she took her son, 3–year–old Hubert Richardson, Junior, for a walk. She said he was restless and would not sleep because he missed his father who was overseas. Hubert was dressed in clothing not previously worn.

Mrs. Richardson further testified that she was approached by a white male with blond hair who appeared to be intoxicated. He was dressed in dark slacks and a white shirt. Mrs. Richardson attempted to move from the path of this man. When she did, however, he moved in her direction. The man then grabbed Mrs. Richardson's right arm and a struggle began. She felt a finger snap and heard her assailant say, "[L]ady, I have a knife." During the struggle, they fell to the ground. At that point the attacker said, "[W]ell, Lady, since I can't get you, I'll get your son." He then grabbed Hubert and ran down the street. Mrs. Richardson pleaded with the man not to hurt her son but the man, carrying the boy with him, fled.

Mrs. Richardson ran to a nearby set of quarters and asked the occupants to contact the military police. She then returned to the street and ran in the direction taken by the man. She observed a car with its lights off proceeding up the street. She described the vehicle as being dark in color with a camel-colored roof. The car's lights came on as the vehicle left the area. Mrs. Richardson further noticed that the rear portion of the car was higher than most vehicles, and the tail lights went all the way across the back of the car.

Staff Sergeant Rocky Giest, a military policeman, also testified at this court-martial. He said that he was on routine patrol during the evening hours of April 12, 1984. He responded to a dispatcher's call regarding an incident in the Comanche III A housing area. When he arrived at the scene of the crime, he met Mrs. Richardson. He characterized her as being so hysterical that she demanded to know what he had done with her son.

Giest further testified that he identified himself as a military policeman and took an initial statement from Mrs. Richardson. He had the provost marshal seal off the area of the base near the incident, and he then began a systematic search for the child. About 2 hours after his initial contact with Mrs. Richardson, he was on a tank trail outside the Commanche III A housing area. He noticed an object he believed to be a dead animal in the road. He swerved to avoid it and at that point realized that it was alive. Giest returned to the object and found that it was a small black male child, lying unclothed in the trail. The child was curled up in a ball and appeared to be in shock. The child was Hubert Richardson, Junior.

First Sergeant John Rogers, another military policeman, who lived in the Comanche III A housing area, testified that at about 9:45 p.m., April 12, 1984, he heard a female voice outside his quarters. The voice was screaming, "Don't hurt him. Don't hurt him." As he looked out a window, he observed a white male running down the street carrying a small black child. The white male ran to a car parked directly in front of Rogers' house, placed the child in

the car, and got in himself. The vehicle then left the area without having any lights on.

First Sergeant Rogers told the court he got a good look at the car which had a brown or tan colored top with a dark bottom. He did not recognize the make of the vehicle but he did note that the trunk was somewhat higher than most automobiles'. Rogers initially theorized that the vehicle might be a Ford Thunderbird or a Mercury Cougar. However, on the day following the incident, he visited a Ford dealer and determined that Ford Motor Company did not manufacture a vehicle with the body type he had seen. After eliminating some vehicle makes, he determined that the automobile was most likely an American Motors product, a Concord. This was confirmed by examination of a book of vehicle outlines. Rogers was confident of his identification of the vehicle because of his experience as a military policeman.

The evening following the assault, Special Agent Daniel Sanchez of the Criminal Investigation Command (CID) contacted Rogers and asked him to ride through a neighboring military housing area. During the ride, Rogers saw a vehicle which closely resembled the one he had observed the night before. A comparison of the tire tread of the vehicle with a picture of a tread mark taken from the area where Hubert had been found indicated that the treads were similar. The vehicle belonged to appellant.

Special Agent Billy Houser of CID testified that he was ordered to investigate the abduction of a very young male and the assault on the male's mother on the evening of April 12, 1984. He arrived at the Comanche III A housing area and began a search for evidence. In the area where the abductor's vehicle had been parked, he found the cap to a Stroh's beer bottle which he secured and marked as evidence.

About this time, a patrol from the Military Police reported finding a small black male child on a tank trail. Houser responded to the call. Upon arrival at the point where the child was found, he began a second search for evidence, finding some tire tracks leading from the tank trail into a nearby field. Following those tracks, he located some items of clothing eventually identified as belonging to the abducted youth. Found nearby were several footprints, those of a small child and those of an adult wearing tennis shoes.

Houser also participated in a vehicle surveillance at a gate of the post. During a 3-hour period all vehicles entering and leaving that gate were observed by Mrs. Richardson. She identified three different vehicles as being similar to the one which she observed on the street near the assault. One of the three belonged to appellant.

Using this information, SA Houser contacted appellant and informed him that his vehicle closely matched the description of that involved in a crime committed on post. On the request of SA Houser, appellant voluntarily returned with him to the CID office. While appellant was there, someone noted that the tennis shoes he was wearing closely matched prints left in the area where Hubert's clothing was found. At that point, he was apprehended and his vehicle seized.

Forensic experts from the Army's Criminal Investigation Laboratory testified regarding certain physical evidence collected in this case. A forensic chemist-serologist testified that several blond caucasian pubic hairs taken from Hubert's clothing were consistent with hair samples taken from appellant. A forensic chemist specializing in trace evidence told the court that fibers found on the child's clothing were similar in many aspects to, and could have come from, the seat covers of appellant's car. Finally, a latent-print examiner testified that he had examined the tire tracks and the tennis-shoe tracks found in the vicinity of Hubert's clothing and compared them with the tires of appellant's car and his tennis shoes. It was his opinion that appellant's tires had the same "class characteristic" as the tread marks found in the area and that the shoes seized from appellant made the footprints found on the scene.

Appellant defended against these charges by offering evidence of an alibi. He testified that after work on April 12, 1984, he visited a friend, Staff Sergeant Vaughn, in the Comanche III A housing area to discuss his marital problems. He stated that he was dressed in a blue short sleeved shirt, blue jeans, and brown house shoes. He further admitted purchasing a twelve-pack of Strohs beer to share with Vaughn and drinking some of it that night. However, he stated that he did not drink a beer in his car and he did not leave Staff Sergeant Vaughn's quarters with a beer. He stayed there until about 10 o'clock that evening, when he went straight home. Appellant denied that he had attacked Mrs. Richardson or kidnapped her son.

Appellant presented a number of witnesses to support his testimony. Staff Sergeant Vaughn testified that appellant had visited him during the evening of April 12 and stayed until approximately 10 o'clock. Mrs. Vaughn also testified that appellant had visited her home and that when he left, she had given him a freshly cut rose to take to his wife. Appellant's wife told the court-martial that appellant had been at the Vaughn's quarters during the evening of April 12 and that he had returned about 10 p.m. She further testified that when he did return to their quarters, he had a fresh rose, and his demeanor and appearance were normal. Finally, a neighbor of the Vaughns, Staff Sergeant Williams, testified that he had observed appellant's car in Vaughn's driveway around 10 o'clock in the evening. However, both Vaughn and Williams admitted giving earlier statements which indicated that appellant may have left the Vaughn's quarters as early as 9:30 p.m. Appellant finally presented a number of character witnesses who testified that he was a peaceful, nonviolent, truthful person.

The Supreme Court in *Jackson v. Virginia*, 443 U.S. at 318–19, 99 S.Ct. at 2788, established the constitutional test for sufficiency of evidence to be met on appellate review of a criminal trial. It said:

After *[In re] Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ] the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S. [276,] at 282 [87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966) ] (emphasis added). *Instead, the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.* See *Johnson v. Louisiana*, 406 U.S. [356,] at 362 [92 S.Ct. 1620, 1624, 32 L.Ed.2d 152 (1972) ]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weight the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

(Footnotes omitted; emphasis added.) In fulfilling our responsibilities under Article 67(d), UCMJ, 10 U.S.C. § 867(d), we have embraced this standard. *United States v. Harper*, 22 M.J. at 161. *See United States v. Wagner*, 7 M.J. 420, 421 (C.M.A.1979).

Appellant makes three specific challenges to the sufficiency of the evidence presented at his court-martial. First, he asserts that there was not sufficient evidence to identify him as the assailant of Mrs. Richardson and kidnapper of her son.

Second, he asserts that there was not sufficient evidence to show that his alleged assault on Mrs. Richardson was done with the intent to commit rape. Third, he asserts that there was not sufficient evidence to show he took indecent liberties with Hubert Richardson. We disagree.

■ Addressing his first contention, we note that there was no direct evidence identifying appellant as the perpetrator of these offenses. Moreover, Mrs. Richardson and Mr. Rogers, who witnessed the occurrence of some of these offenses, were unable to identify appellant at trial or on several occasions prior to trial. Finally, the child, Hubert, did not testify at trial, and some evidence of alibi was introduced by the defense. *Cf. United States v. Ford,* 23 M.J. at 334; *United States v. Williams,* 21 M.J. 360, 362 (C.M.A.1986). Nevertheless, direct evidence of a crime or its elements is not required for a finding of guilty; circumstantial evidence may suffice. *See* para. 74*a* (3), Manual for Courts-Martial, United States, 1969 (Revised edition).

In this regard, we hold that the record contains evidence of numerous facts from which the inference of the ultimate fact of identity could be drawn. *See generally Jackson v. Virginia, supra.* The evidenced facts were appellant's presence at or near the scene of the first two crimes around the time they occurred; his similarity to the assailant in physical appearance, clothing, and in drinking alcohol; the similarity of his car to the assailant's car in color, style, and tire-tread pattern; his linkage to the crime scene in the woods by tire tracks and a footprint; and his linkage to the victim by fiber evidence. We simply cannot say that no rational person could, based on this evidence, infer beyond a reasonable doubt that appellant was the perpetrator of these offense. *See generally United States v. Baker,* 24 M.J. 354 (C.M.A.1987); *United States v. Ford, supra* at 337.

■ The second challenge concerns the Government's evidence that appellant's al-

leged assault was done with an intent to rape Mrs. Richardson. *See* para. 213(f)(1)(c), Manual, *supra.* In this regard, we note that the victim was a female and the assailant a male. In addition, the degree and duration of the force applied as well as employment of threats suggest a purpose of overpowering this female's will. *See* Art. 128, UCMJ, 10 U.S.C. § 928. Finally, the language employed by the assailant—"Well, Lady, since I can't get you, I'll get your son"—can reasonably be construed as having sexual connotations under the circumstances of this case. Together, this evidence could lead a rational person to infer beyond a reasonable doubt that appellant intended to rape Mrs. Richardson when he grabbed her and wrestled her to the ground.

■ The third challenge questions the adequacy of the Government's evidence to show that appellant took indecent liberties with Hubert Richardson, Junior. The particular acts alleged were that appellant took the child's clothes off and exposed his penis to the child. As noted above, evidence was presented at this trial that a 3–year-old child was abducted and later found naked in the woods in a state of shock. It was reasonable for the members to infer on this evidentiary basis that the abductor, not the child, removed the clothing. In addition, evidence was presented that pubic hairs were removed from the child's clothing, and they were consistent in physical characteristics with a sample from appellant. The nature of the hair as pubic, its presence on the child's clothing, its origin from the assailant, and the assailant's earlier statement were sufficient evidence for the members to infer beyond a reasonable doubt that appellant exposed himself to this child.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.