UNITED STATES, Appellee,

v.

Richard E. ROUNDS, Jr., Senior Airman, U.S. Air Force, Appellant.

No. 61,912.
ACM S27875.

U.S. Court of Military Appeals.

April 24, 1990.

Certiorari Denied Oct. 1, 1990.
See 111 S.Ct. 130.

For appellant: *Captain Paul M. Danko-vich* (argued); *Colonel Richard F. O'Hair* (on brief).

For appellee: *Captain David G. Nix* (argued); *Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie* (on brief).

## Opinion of the Court

SULLIVAN, Judge:

In March and April 1988 appellant was tried by a special court-martial composed of officer members at Randolph Air Force Base, San Antonio, Texas. Contrary to his pleas, he was found guilty of a specification of wrongful use of cocaine at divers times in Houston, Texas, and another specification of wrongful use of marijuana at divers times in Houston and San Antonio, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a.[1] He was sentenced to a bad-conduct discharge, confinement for 4 months, forfeiture of $200.00 pay per month for 4 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence in a short-form opinion on December 20, 1988.

This Court granted review of the following issue:

WHETHER APPELLANT'S CONFESSION OF 21 JANUARY 1988 WAS CORROBORATED AS REQUIRED BY MIL. R.EVID. 304(g).

We hold that appellant's confession to marijuana use in San Antonio at his Randolph Air Force Base barracks and cocaine use in Houston at a civilian New Year's Eve party was adequately corroborated as required by military law. *See United States v. Melvin,* 26 MJ 145 (CMA 1988); *United States v. Yeoman,* 25 MJ 1 (CMA 1987). *See generally* Mil.R.Evid. 304(g), Manual for Courts–Martial, United States, 1984. However, his confession to cocaine use in Hous-

---

1. Appellant was subsequently found guilty of the following charges:

    Charge: I Violation of the UCMJ, Article 112a
        Specification 1: In that [the accused] did, at or near Houston, Texas, at divers times, from on or about November 1987 to on or about January 1988, wrongfully use cocaine.

    Specification 2: In that [the accused] did, at or near Houston, Texas, and at or near San Antonio, Texas, at divers times, from on or about December 1987 to on or about 1 January 1988, wrongfully use marijuana.

ton during Thanksgiving was not sufficiently corroborated under military law, so the portion of the specification covering this offense cannot be sustained. *Id.* Finally, the portion of the other specification pertaining to use of marijuana in Houston at the same New Year's Eve party noted above cannot otherwise be sustained. *See generally United States v. Hart,* 25 MJ 143 (CMA 1987), *cert. denied,* 488 U.S. 830, 109 S.Ct. 85, 102 L.Ed.2d 61 (1988).

The evidence of record is as follows. A civilian female went to the Air Force Office of Special Investigations (OSI) at Randolph Air Force Base and made a statement implicating appellant in the use of drugs. After advisement of his rights, appellant was then questioned by agents of the OSI at Building 205, Randolph Air Force Base, Texas, on January 21, 1988. During this questioning, appellant made a written statement denying any knowledge of, or participation in, drug use with Airmen Rangel, Longworth, and Sax since his arrival at Randolph Air Force Base in August 1987. OSI Agent Barker then elicited a second handwritten and unsigned statement from appellant to the same effect. However, Agent Barker testified that he "knew that the statement was not true." Accordingly, Agent Barker "gave him the option of either signing the statement that [appellant] knew to be false or completing the third statement."

Appellant then made a third hand-written statement:

I have smoked marijuana since being here. Why? I don't know. And cocaine. I did the cocaine in Houston. A couple times. On Thanksgiving and on New Years. Again I don't know why. Because it is all not worth it. If there were any way of reversing all of this I would. I am like most people think doing once or twice won't hurt anything. I didn't expect to ever get out of the Air Force. It is the only job I've really ever enjoyed. Being cool around others was not then and is not now. I apologize for giving false statement. But I felt the others would not tell anything. I was only trying to cover for all of us. Not just

myself. That is Eric, Ron, and Terry. Ron [and] Terry never went to Houston. Just Eric and myself. He talked me into going on Thanksgiving Holiday. That's when I did the cocaine. Then and only then have I ever thought about it before. Its a hard decision to sit there and tell somebody no. I wish I would have, because I really don't want to face family members and tell them why I'm home. I did have a good future and everything was going my way.

Its too bad I've chosen the wrong friends and have made the wrong decisions. Everything I've accomplished has just gone to waste. Three and a half years worth. On both trips to Houston Eric and I both took part in the use of cocaine.

Regarding the marijuana offense, the prosecution presented the testimony of Airman Basic Ronald Longworth and Airman Eric Sax, appellant's barracks' mates. Airman Longworth testified that in December of 1987 he returned to his barracks after doing his laundry. He entered a bathroom-passageway between his room and Airman Sax' room and observed appellant and Airman Sax standing near a burning marijuana cigarette in an ashtray. Airman Longworth "took a couple of puffs off of it, and put it back down." He had seen and used marijuana before, and he identified the substance as marijuana. He further stated that he never saw appellant taste, smoke, touch, or have anything to do with this marijuana cigarette.

Airman Sax also testified that on one occasion sometime between late November and early December 1987, he had smoked marijuana in this same passageway. He stated that he returned from a night of drinking with three friends, including appellant. While appellant left this group to turn on some music, the other three airmen lit a marijuana cigarette and smoked it. He then left the room to turn on his music and returned to find all his friends, including appellant, in the passageway and the cigarette burning in the ashtray. He stat-

ed that he did not see appellant smoke or even touch the marijuana cigarette. He also said that during a New Year's Eve party in Houston, he observed appellant "standing in a group" where a lit marijuana cigarette was being smoked. Airman Sax testified that he himself "smoked a little more off of it, and handed it back to" the person who originally had the cigarette.

Concerning the cocaine offenses, the Government again presented the testimony of Airman Sax. He testified that he had taken appellant to Houston, Texas, for the 1987 Thanksgiving holiday. During a drinking party, he left appellant with high school friends, all of whom had "been involved in the use of drugs." Moreover, Airman Sax noted that he knew that one of these friends had previously been involved with cocaine, although he did not see drugs at this particular party. Finally, Airman Sax testified that he was absent from the party for approximately an hour.

Airman Sax also testified that, while in Houston on New Year's Eve, he and appellant met again with the high school friends from the Thanksgiving visit. They went to "a fraternity party" being held at the Houston Sheraton Hotel. He stated that he told appellant that "drugs would be present," and in fact such drugs were in visible abundance. At one point, Airman

Sax requested a dollar bill from appellant, who was standing beside Sax with an unobstructed view of the cocaine Airman Sax intended to consume. Sax rolled the dollar bill into a straw and inhaled the cocaine into his nose. He returned the dollar bill to appellant. Later, Airman Sax requested the dollar bill, again for use as a cocaine straw. Appellant was standing beside Sax during this second use of cocaine as well. Airman Sax also testified that appellant was not with him during the entire evening.

---

Appellant's basic complaint is that evidence of his confession on January 21, 1988, was admitted by the judge in violation of Mil.R.Evid. 304(g).[2] *See generally United States v. Yeoman, supra; United States v. Yates,* 24 MJ 114 (CMA), *cert. denied,* 484 U.S. 852, 108 S.Ct. 154, 98 L.Ed.2d 109 (1987); *see also United States v. Seigle,* 22 USCMA 403, 406–07, 47 CMR 340, 343–44 (1973). He broadly asserts that an inference of truth concerning the essential facts of his confession cannot reasonably or logically be drawn from the independent evidence introduced as corroboration at his court-martial. *See generally United States v. Melvin,* 26 MJ 145. On the contrary, he contends that this independent evidence was "counter to the admitted

2. Mil.R.Evid. 304(g) states:
   *Corroboration. An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth.* Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence. If the independent evidence raises an inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission that are corroborated by the independent evidence. Corroboration is not required for a statement made by the accused before the court by which the accused is being tried, for statements made prior to or contemporaneously with the act, or for statements offered

under a rule of evidence other than that pertaining to the admissibility of admissions or confessions.
   (1) *Quantum of evidence needed. The independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. The independent evidence need raise only an inference of the truth of the essential facts admitted.* The amount and type of evidence introduced as corroboration is a factor to be considered by the trier of fact in determining the weight, if any, to be given to the admission or confession.
   (2) *Procedure.* The military judge alone shall determine when adequate evidence of corroboration has been received. Corroborating evidence usually is to be introduced before the admission or confession is introduced but the military judge may admit evidence subject to later corroboration.
   (Emphasis added in text.)

facts" of his confession or "only consistent" in a "peripheral" way. *See United States v. Mims*, 8 USCMA 316, 318–19, 24 CMR 126, 128–29 (1957).

■ We first note that neither this Court nor the judge must accept appellant's view of the record of trial and the inferences which might be reasonably drawn therefrom. *See United States v. Wagner*, 7 MJ 420, 421 (CMA 1979); *United States v. O'Neal*, 1 USCMA 138, 2 CMR 44 (1952); *United States v. McCrary*, 1 USCMA 1, 1 CMR 1 (1951). Admittedly, Airman Longworth and Airman Sax testified that they did not personally see appellant use marijuana or cocaine during the events covered by their testimony. However, their testimony did establish appellant's presence at the scene of active drug use and his direct access to the drugs being used by others at his barracks and the New Year's Eve party in Houston. Moreover, they admitted their own inability to fully account for appellant's actions during these incidents. Accordingly, we do not construe the proffered corroborative evidence as establishing appellant's innocence of these offenses or as contradicting his confession.

Appellant's second attack on the peripheral nature of the evidence of corroboration proffered by the Government is somewhat more persuasive. He asserts that this independent evidence was insufficient corroboration because it did not directly show that he consumed, ingested, or otherwise used drugs as he confessed. He further states that even the direct proof of some peripheral facts stated in his confession is not legally sufficient corroboration under Mil.R.Evid. 304(g). We disagree, except with respect to the proffered corroboration of his confessed use of cocaine during Thanksgiving in Houston.

■ Independent evidence of each and every element of the confessed offense is not required as a matter of military law. *United States v. Melvin, supra; cf. United States v. Villasenor*, 6 USCMA 3, 6, 19 CMR 129, 132 (1955). All that is required is that the independent evidence raise an inference of truth as to the essential facts

stated in the confession. *See* Mil.R.Evid. 304(g). Generally speaking, it must "establish the trustworthiness of the" confession. *See generally Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954).

■ Here, the testimony of Longworth and Sax concerning marijuana use at the barracks and cocaine use at the New Year's Eve party in Houston dovetail with the time, place, and persons involved in the criminal acts admitted by appellant in his confession. More importantly, their testimony concerning these two incidents clearly shows that appellant had both access and the opportunity to ingest the very drugs he admitted using in his confession. This is enough. *See United States v. Melvin, supra* at 147. This same corroboration, however, is distinctly lacking with respect to appellant's admitted earlier use of cocaine on Thanksgiving in Houston. There, Airman Sax, the Government's sole witness to this incident, said he saw "no drugs" whatsoever at that time.

Admittedly, *United States v. Mims, supra*, 8 USCMA 316, 24 CMR 126, suggests this confession is uncorroborated as to all the charged offenses. There, this Court held that independent evidence falling short of establishing actual ingestion was not sufficient to corroborate an accused's confession to use of heroin. In that case, the accused admitted taking a shot of heroin in a hospital ward shower room on a certain date and at a certain time. The proffered corroboration was evidence of fresh needle marks in the accused's arm, but those marks also happened to be located where blood extractions were taken from him for medical reasons; and evidence that drug-injection paraphernalia was found hidden in another soldier's bunk in the ward where Mims was housed.

Later, however, in *United States v. Melvin, supra*, 26 MJ 145, this Court held that independent evidence falling short of showing ingestion was sufficient to corroborate an accused's confession to heroin use. There, the accused admitted to smoking heroin over the past 4 months with Dudu,

his drug supplier. The proffered corroboration was evidence showing the accused's possession of heroin at the time of his arrest, the form of the seized heroin in cigarettes, the presence of other drug ingestion paraphernalia on his person, and his relationship with Dudu, including the situs and circumstances of their meetings.

This apparent conflict, however, can be readily reconciled on the basis that the elements-corroboration (corpus delicti) test was employed in *Mims (see People v. Talve,* 422 N.Y.S.2d 475, 73 A.D.2d 629 (1979); *State v. Villalobos Alvarez,* 155 Ariz. 244, 745 P.2d 991, 993 (Ariz.App. 1987)), but the trustworthiness-corroboration test was employed in *Melvin.* The latter test of corroboration, long accepted by the Supreme Court, was expressly adopted by the President in Mil.R.Evid. 304(g) and has been in the Manual since August 1, 1969. *See also* para. 140*a* (5), *Analysis of Contents, Manual for Courts–Martial, United States, 1969, Revised Edition.* This same, less-demanding, standard of corroboration is also applicable in the present case. We doubt, however, that even this standard can be satisfied by evidence that appellant's companions on that Thanksgiving in Houston had previously used the same drug in high school which appellant admitted using in his confession. This goes beyond our holding in *United States v. Melvin, supra.*

■ The final problem we must address is appellant's contention that his confession to marijuana use is so vague that it could never be corroborated as required by Mil.R. Evid. 304(g). In particular, he points to its failure to expressly name a situs for this criminal activity and the resulting speculation concerning the precise offense or offenses to which he had actually confessed. Accordingly, he argues that true corroboration, even under the more relaxed view, is unattainable. We must reject such an argument in the present case.

■ First, we note that no legal authority is cited for his novel approach to

the law of confessions, and it is not consistent with Mil.R.Evid. 304(c) and (g). The situs of a drug offense is no longer a necessarily relevant factor in military criminal prosecutions, and it cannot be considered determinative of criminal liability under Article 112a. *See Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987); *United States v. Cline,* 29 MJ 83 (CMA 1989). Accordingly, the omission of the situs of the crime in appellant's confession does not make it any less "an acknowledgement of guilt" within the meaning of Mil.R.Evid. 304(c). Moreover, the very fact of its omission from the confession would indicate that it is not an essential fact admitted by appellant which requires corroboration under Mil.R.Evid. 304(g). *Cf. King v. State,* 585 S.W.2d 720, 722 (Tex.Crim.App.1979). In any event, for the reasons stated below, we construe appellant's confession to impliedly state that his marijuana use occurred at Randolph Air Force Base, San Antonio, Texas, and this admission was adequately corroborated. *See* Mil.R.Evid. 104.[3]

Turning to appellant's confession, we note appellant stated, "I have smoked marijuana since being here." It further describes his anxiety over his possible elimination from the Air Force for these crimes. Also, the confession itself was written on an Air Force form signed by appellant with his mailing address at Randolph Air Force Base, Texas, and Unit designation—12 OM/TWT 2. Finally, he previously asserted in his initial statement that he did not use drugs with Longworth, Rangel, and Sax since his August arrival at Randolph Air Force Base. The reasonable inference from all of the above was that appellant used marijuana at this military base since his assignment there. As noted above, there was ample corroboration for such use in the testimony of Airmen Longworth and Sax.

■ Of course, our narrow construction of appellant's confession brings to the fore-

---

**3.** Appellant, in testifying on a voluntariness-suppression motion, stated that he used "here" to mean "Texas." However, this testimony was

not before the members on findings, so it cannot be considered in evaluating the sufficiency of the evidence of guilt in this case.

front another problem resulting from the wording of this confession. That document also makes a distinction between "here" and "Houston," and it specifically admits only use of cocaine in Houston. In view of Airman Sax' additional failure to see appellant actually use marijuana in Houston, no evidence of marijuana use at that location and time exists in the record for this crime. Accordingly, this portion of the marijuana-use finding must fail for insufficient evidence. *See generally United States v. Hart, supra,* 25 MJ 143. Nevertheless, appellant remains convicted of multiple drug offenses, and we seriously doubt that resentencing by a court-martial or reassessment by the Court of Military Review will produce a more favorable sentence. *See* Art. 59(a), UCMJ, 10 USC § 859(a).

### DECISION

Specification 1 of Charge I is amended by striking the words "at divers times, from on or about November 1987 to." Specification 2 of Charge I is amended by striking the words "at or near Houston, Texas, and" as well as the words "at divers times."

The decision of the United States Air Force Court of Military Review as to Charge I and its specifications (both as amended) and the sentence is affirmed. The findings of guilty as to the stricken language in the specifications are set aside and that language is dismissed.

COX, Judge (concurring):

Although I am somewhat uncomfortable with the sufficiency of the evidence in this case, both as to quality and quantity, for the arguments advanced by Chief Judge EVERETT in his separate opinion and for other reasons,* I am unable to articulate a legal basis for reversing the conviction. In reaching this result, I must necessarily retreat from my position in *United States v. Corbett,* 29 MJ 253, 257 (CMA) (Cox, J., concurring in part and dissenting in part), *cert. denied,* —— U.S. ——, 110 S.Ct. 506, 107 L.Ed.2d 508 (1989).

Upon further consideration of the Military Rules of Evidence and the evolving Federal case law pertinent to the identification and proof of drugs by lay witnesses, I am persuaded that an individual can express an opinion to prove that a particular substance is illegal, *PROVIDED* that he or she has a rational basis for the conclusion. Mil.R.Evid. 701, Manual for Courts–Martial, United States, 1984. Likewise, the Government can establish the illegality of a drug through circumstantial evidence. *United States v. Schrock,* 855 F.2d 327, 334 (6th Cir.1988).

Here, two lay witnesses placed appellant at the scene of drug use. They identified the drugs in use as cocaine and marijuana, both prohibited substances under Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Furthermore, circumstances surrounding the time, place, and method of use of the substances gave rise to an inference that the substances were illegal. If the Government proves through independent evidence that an accused was present at the scene where illegal drugs were used and the accused admits that he did use them, the independent proof of these essential facts corroborates his admission that he consumed drugs. *See generally County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); para. 37(c)(5), Part IV, Manual, *supra.* I agree with Judge Sullivan that the evidence was sufficient in this case to corroborate appellant's confession for purposes of its admissibility.

However, because the Government also has the ultimate burden of establishing that the substances were illegal drugs, the next question is whether appellant's and the witnesses' opinions as to the identity of the substances were sufficient to convince a rational factfinder of those facts beyond a reasonable doubt. *See United States v. Reichenbach,* 29 MJ 128 (CMA 1989); *United States v. Murphy,* 23 MJ 310 (CMA 1987). Conclusions as to the identity of

---

* *See United States v. Guaglione,* 27 MJ 268, 277 (CMA 1988) (Cox, J., concurring with reserva-    tions); *United States v. Tippy,* 25 MJ 121 (CMA 1987).

chemical compounds should be based on more than estoppel by confession of lay witnesses.

EVERETT, Chief Judge (concurring in part and dissenting in part):

The majority concludes that specification 1 of Charge I must be amended by striking the words "at divers times, from on or about November 1987 to"; and that the words "at or near Houston, Texas, and" as well as the words "at divers times" must be stricken from specification 2. I agree with this conclusion, but I would go further because, unlike the majority, I am unpersuaded that the other evidence corroborated appellant's confession that he had used marijuana. On the other hand, I agree with the majority that appellant's confession to using cocaine on New Year's Eve in Houston was adequately corroborated by independent evidence.

I

Mil.R.Evid. 304(g), Manual for Courts-Martial, United States, 1984, prescribes:

An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that *corroborates the essential facts admitted to justify sufficiently an inference of their truth.*

(Emphasis added.) The majority of this Court has recognized that, to satisfy this rule, " 'the quantum of evidence' needed to raise such an inference is 'slight.' " *United States v. Yeoman*, 25 MJ 1, 4 (CMA 1987), quoting S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 139 (2d ed.1986). *Accord United States v. Melvin*, 26 MJ 145, 146 (CMA 1988). It suffices that "there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty." *Id.*, quoting *Smith v. United States*, 348 U.S. 147, 156, 75 S.Ct. 194, 199, 99 L.Ed. 192 (1954). The independent evidence need not support every element of the offense or itself prove the defendant's guilt beyond a reasonable doubt.

It is not the *quantity* of corroborating evidence that concerns me here; rather, it is the *quality* of that evidence. The whole purpose served by the requirement for corroborative evidence is to ensure the reliability of the confession as a basis for conviction. As the Supreme Court observed in *Smith*, not only the involuntary, coerced confession is the. focus of concern, for there are "separate doctrines [that] exclude involuntary confessions from consideration by the jury...." As the Court put it:

[T]hough a statement may not be "involuntary" within the meaning of this exclusionary rule, still its reliability may be suspect if it is extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past. Finally, the experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made.... These are the considerations which justify a restriction on the power of the jury to convict, for this experience with confessions is not shared by the average juror.

348 U.S. at 153, 75 S.Ct. at 197.

To satisfy these reservations about reliability of confessions—without, at the same time, unduly restricting appropriate use of confessions by factfinders—the Supreme Court has established the rule that a confession may support a conviction "as long as there is *substantial independent evidence that the offense has been committed,* and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty." *Id.* at 156, 75 S.Ct. at 199 (emphasis added.) When I consider the nature of appellant's confession to using marijuana, I am convinced that the quality of the evidence cited by the majority to "corroborate" that confession does not satisfy this rule.

Part of the difficulty arises from the extremely general nature of appellant's confession. Where a confession is replete with detail, the opportunity for corrobora-

tion is rather generous. For example, in their Analysis of Mil.R.Evid. 304(g), the drafters of that provision offer this hypothetical:

> [P]resume that an accused charged with premeditated murder has voluntarily confessed that, intending to kill the alleged victim, she concealed herself so that she might surprise the victim at a certain place and that when the victim passed by, she plunged a knife in his back. At trial, the prosecution introduces independent evidence that the victim was found dead as a result of a knife wound in his back at the place where, according to the confession, the incident occurred. This fact would corroborate the confession because it would support an inference of the truth of the essential facts admitted in the confession.

Drafters' Analysis, Manual, *supra* at A22–13 (Change 3). In this example, the prosecution's opportunity for corroborating the confession is ample due to the detail of the confession: identity of the victim; instrument used to kill him (a knife); locus of the fatal wound (the back); and place where the murder occurred. Independent evidence of all the detail of the confession adequately corroborates the trustworthiness of the confession and its only uncorroborated factor: identity of the culprit.

The prosecution in this case, though, was not so fortunate. Here the beginning and the end of appellant's confession to marijuana use of any sort was this passage: "I have smoked marijuana since being here. Why? I don't know." I interpret this language to mean that Rounds had used marijuana after being transferred to Randolph Air Force Base. However, it provides no basis for inferring where he smoked the marijuana—whether at Randolph Air Force

Base, elsewhere in San Antonio, or somewhere else in Texas. In my view, when a confession is this general, the quality of the independent evidence offered to corroborate the fact that the offense was committed must be rather high if the corroboration is to satisfy the concerns discussed earlier.

To illustrate—and by analogy to the Drafter's Analysis of Mil.R.Evid. 304(g) quoted above—assume that an accused confessed that he had used marijuana in his barracks with Private Doe and PFC Roe on a number of occasions since arriving at his current installation. The prosecution then offers evidence that someone had seen appellant in his barracks room on that installation, with Private Doe and PFC Roe also in the room, and that a burning marijuana cigarette lay in an ashtray within reach of all three. Even though there was no independent evidence directly showing that appellant *used* the marijuana on the occasion mentioned, the "dovetailing" (in the majority's words) of the detail of the confession and the detail of the independent evidence adequately meets the requirement that the latter corroborate that the offense confessed to occurred.

What is the nature of the "corroborating" evidence offered here to support appellant's detail-deficient confession? It consists of testimony of two fellow airmen—Longworth and Sax.[1]

Longworth testified that, *during December 1987*, he saw *appellant and Sax* standing *near a burning marijuana cigarette* in an ashtray in the bathroom/passageway *between Longworth's and Sax' room;* he testified that he never saw appellant have anything to do with the cigarette.[2] Sax

---

1. The military judge instructed the court members on accomplice testimony and advised them that "[w]hether ... Airmen Longworth and Sax, who testified as witnesses in this case, were accomplices is a question for you to decide."

2. On direct examination of Longworth, trial counsel brought out, over defense objection, that Longworth had made a statement to the OSI that Rounds and Sax had been smoking the marijuana cigarette when he arrived and that

then they smoked it together. Apparently this statement was not made under oath, so it would be considered hearsay. *See* Mil.R.Evid. 801(d)(1). Thus, it was not admissible as substantive evidence (Mil.R.Evid. 802), although it could be used to impeach Longworth. The defense objection was not made specifically on hearsay grounds; and it could be argued that any hearsay objection was waived. *See* Mil.R. Evid. 103. In that event, Longworth's testimony

testified that, *sometime in late November or early December 1987*, he had smoked marijuana in this passageway. *He and three friends* (including appellant) had returned from drinking; appellant left at some point to go turn on some music and, *while he was gone*, Sax and the others lit and smoked a marijuana cigarette; *Sax then left* to turn on some music and returned to find his friends (including appellant) in the passageway with a marijuana cigarette burning in an ashtray. He testified that he never saw appellant have anything to do with the cigarette.

It is not apparent to me that Longworth and Sax are addressing the same incident; the dates do not coincide; and the accounts differ in other respects, such as the number of persons present. The two versions are not mutually supportive in a way that gives either one greater weight as corroboration than it would have on its own.

Furthermore, the details of these incidents are not necessarily such as to constitute great high-quality evidence that Rounds used marijuana. The locus in each case was a shared bathroom passageway between the rooms of Longworth and Sax. Although appellant shared Longworth's room as his roommate, this passageway was not uniquely under appellant's control but, instead, was equally under the control of and accessible to Longworth and Sax, as well. In each instance, the marijuana cigarette was in an ashtray that was not uniquely accessible to Rounds. On each occasion, at least one other person was near the ashtray; and so, there is no necessary inference that the burning cigarette had been lit or used by Rounds. Neither Longworth nor Sax could testify that Rounds either smoked or touched a marijuana cigarette.

If appellant's confession had been more detailed and if those details had "dovetailed" with the details in Longworth's and Sax' testimony, my conclusion would be different. Or, perhaps, even with a confession as general as this one, if the independent evidence were more indicative of use by appellant (*e.g.*, if he had held the cigarette or had demonstrated physical manifestations of having used marijuana), I could find the necessary corroboration. However, here the prosecution evidence does not constitute the "substantial independent evidence that the offense has been committed" (*see Smith*); and for this reason, I must dissent from affirming any finding of guilty of marijuana use.

## II

Applying a similar approach to the alleged use of cocaine in Houston at a New Year's Eve party, I agree that the independent evidence is substantial enough—both in quantity and quality—to corroborate appellant's confession. As summarized by the majority, the detail of that evidence (such as the unique time and the uncommon place) satisfactorily "dovetails" with the detail of that incident as reflected in appellant's confession.[3]

## III

Accordingly, I would reverse the decision below except to the extent it concerns appellant's use of cocaine in Houston on New Year's Eve; and I would dismiss specification 2 of Charge I. Since appellant then would remain convicted only of a single drug offense—not the "multiple drug of-

---

would be legally sufficient to sustain the findings. However, since the Government did not advance this theory at trial or on appeal, it would be inappropriate to rely on it at this stage in the proceedings.

**3.** Airman Sax described how, at the party in Houston, Rounds had provided him a dollar bill that he could use in snorting some cocaine that was present. Under the circumstances, this assistance would probably make Rounds criminal-

ly liable as a principal for Sax' use of cocaine. Art. 77, Uniform Code of Military Justice, 10 USC § 877. The Government, however, did not advance this theory, and the military judge did not instruct thereon. Therefore, I need not decide whether independent evidence of being a principal to a crime constitutes corroboration of a confession to committing the crime as the active participant.

fenses" upheld by the majority, *see* 30 MJ 76, 82—I would return the record for the Court of Military Review to take appropriate action on the sentence.