# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private First Class JEREMY M. WESTBROOK**
**United States Army, Appellant**

ARMY 20120369

Headquarters, U.S. Army Aviation Center of Excellence and Fort Rucker
Stephen E. Castlen, Military Judge
Colonel Kevin K. Robitaille, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA; Major Vincent T. Shuler, JA; Captain Ian M. Guy, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Catherine L. Brantley, JA; Captain T. Campbell Warner, JA (on brief).

23 December 2014

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of conspiracy to make false official statements, two specifications of making a false official statement, five specifications of aggravated sexual assault, one specification of an indecent act, and one specification of forcible sodomy, in violation of Articles 81, 107, 120, and 125 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, 920, 925 (2006 & Supp. IV 2011) [hereinafter UCMJ].  The panel sentenced appellant to a bad-conduct discharge, confinement for twelve months, and reduction to the grade of E-1.  The military judge provided appellant with 45 days of

confinement credit.[*]  The convening authority approved the sentence as adjudged including the 45 days of confinement credit.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises five assignments of error, all of which merit discussion and relief.  Appellant personally raises one additional issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which we find to be without merit.

## BACKGROUND

Appellant and his male friend, Private First Class (PFC) DH, rented a hotel room at a local Econo Lodge in Dothan, Alabama, near Fort Rucker.

Appellant invited Private (PVT) LK, a 19-year-old female Advanced Individual Training (AIT) student who was on liberty, to join them in their hotel room.  Private LK was at the same hotel visiting friends that day.  In the late afternoon, PVT LK went to appellant's room and was afforded significant amounts of alcohol by appellant and PFC DH.  As a result of drinking a considerable amount in a very short period of time combined with a low tolerance for alcohol and little food in her stomach, PVT LK became extremely intoxicated.  Private LK was so intoxicated that she vomited several times before finally passing out on one of the beds in the room.

At some point after PVT LK became intoxicated, appellant removed PVT LK's clothes, placed a condom on his penis, and had vaginal intercourse with her.  Private LK did not move or verbally respond while appellant was having sexual intercourse with her.  After ejaculating, appellant went to the bathroom.  In turn, PFC DH proceeded to have vaginal intercourse with PVT LK.  After PFC DH stopped, he retired to the bathroom and appellant returned to the bed where PVT LK was lying.  Appellant then licked PVT LK's vagina and proceeded to have vaginal intercourse with PVT LK a second time.

When PVT LK finally awakened, she found appellant and PFC DH asleep.  She had no memory of the sexual encounter but was feeling ill and intoxicated.  Without waking appellant and PFC DH, she got dressed, left the room, and called a cab to get back to Fort Rucker.  She later found out about the sexual encounter through rumors in the unit, after which, she reported the incident.

---

[*] The military judge accepted an agreement between the government and defense counsel to award appellant Article 13, UCMJ, credit against appellant's sentence to confinement.

When appellant was eventually questioned by Criminal Investigation Command (CID) about the incident, he provided a written statement asserting PVT LK was conscious during the intercourse and she urged him to "f--k her harder."

During a separate later interview with CID, appellant provided another written statement admitting he lied during his first CID interview regarding PVT LK being conscious and telling him to "f--k her harder." Appellant also indicated that he and PFC DH agreed to tell a cover story—"a version of the truth"—to CID about the events of the evening. This admission gave rise to the charge of conspiracy to make false official statements.

## DISCUSSION

### A. Merger of the False Official Statements: Specifications 1 and 2 of Charge I

In this case, the record reflects appellant's convictions for two false official statements arose from one CID interview during which appellant provided a statement containing more than one falsehood "in certain particulars." *Manual for Courts-Martial, United States* (2012), pt. IV, ¶ 31.b.(2). Under the facts of this case, the record is sufficient for us to conclude there was only one official statement concerning the same incident and victim, albeit two separate falsehoods were included in that single statement. *See United States v. Wright*, 44 M.J. 739 (Army Ct. Crim. App. 1996).

As the government concedes, it is appropriate to merge Specifications 1 and 2 of Charge I to comport with the evidence presented at trial that appellant made but one official statement.

### B. Unreasonable Multiplication of Charges

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts-Martial 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). In *Quiroz*, our superior court listed five factors to guide our analysis of whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;

3

(2) Is each charge and specification aimed at distinctly separate criminal acts?;

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of he charges?

55 M.J. 338-39 (internal quotation marks omitted).

### 1. Article 120, Specification 1 of Charge II and Specification 1 of Additional Charge II

The government charged appellant twice under Article 120, UCMJ, using alternate theories for the same act. Specifically, appellant was charged with penetrating PVT LK's vulva with his penis while she was substantially incapacitated and penetrating PVT LK's vulva with his penis by causing bodily harm to her. Applying the *Quiroz* factors to the evidence, these two separate charges arose from the same criminal act and exaggerate appellant's criminality for findings. The government concedes this issue and we accept that concession. We will, therefore, dismiss the relevant specification of aggravated sexual assault by causing bodily harm.

### 2. Article 120, Specification 2 of Charge II and Specification 2 of Additional Charge II

Similarly, for another and distinct act of sexual assault on PVT LK, the government again charged appellant alternatively under Article 120 for penetrating PVT LK's vulva with his penis while she was substantially incapacitated as well as penetrating PVT LK's vulva with his penis by causing bodily harm to her. Applying the *Quiroz* factors to the evidence, these two specifications arose from the same criminal act and exaggerate appellant's criminality for findings. The government concedes this issue and we accept this concession. We will, therefore, dismiss the relevant specification of aggravated sexual assault by causing bodily harm.

### 3. Article 120 and 125

For appellant's act of forcible oral sodomy on PVT LK, the government charged appellant under alternative theories with violations of both Article 120 and

Article 125, UCMJ. Applying the *Quiroz* factors to the evidence presented during trial, the two separate charges arose from the same criminal act and, again, exaggerate appellant's criminality for findings. The government concedes this issue and we accept this concession. We will, therefore, dismiss the Article 120, UCMJ, specification charging the sodomitic sexual assault of PVT LK while she was substantially incapacitated.

### C. Failure to Corroborate Appellant's Confession Regarding the Conspiracy to Make False Official Statements With PFC DH

The military judge admitted into evidence appellant's second statement which included his specific admission regarding his conspiracy with PFC DH. Confessions must be corroborated by "independent evidence, either direct or circumstantial . . . that corroborates the essential facts admitted to justify sufficiently an inference of their truth." Military Rule of Evidence 304(g). Our superior court has instructed:

> The corroboration requirement for admission of a confession at court-martial does not necessitate independent evidence of all the elements of an offense or even the corpus delicti of the offense. Rather, the corroborating evidence must raise only an inference of truth as to the essential facts admitted. Moreover, while the reliability of the essential facts must be established, it need not be done beyond a reasonable doubt or by a preponderance of the evidence.

*United States v. Seay*, 60 M.J. 73, 79 (C.A.A.F. 2004) (citing *United States v. Cottrill*, 45 M.J. 485, 489 (C.A.A.F. 1997)). Generally speaking, the corroboration requirement need only establish the confession is trustworthy. *See United States v. Rounds*, 30 M.J. 76, 80 C.M.A. 1990) (citing *Opper v. United States*, 348 U.S. 84, 93 (1954)).

To convict appellant of conspiracy to make a false official statement, it is necessary that the government prove appellant entered into an agreement with PFC DH to make a false official statement. Apart from appellant's admission, the government produced no evidence, direct or circumstantial, that there was any agreement between the two soldiers to make false official statements. The evidence in this case falls short of fortifying the truth of appellant's admission to a conspiracy with PFC DH to lie to investigators. The government concedes this and we accept this concession. *See United States v. Dake*, 12 M.J. 666 (C.M.A. 1981). Because there is insufficient evidence of a conspiracy, the finding of guilty as to Charge III and its Specification, a violation of Article 81, UCMJ, must be set aside.

**CONCLUSION**

The findings of guilty to Specification 3 of Charge II, the Specification of Charge III and Charge III, Specifications 1 and 2 of Additional Charge II and Additional Charge II are set aside and those specifications are DISMISSED.

Specifications 1 and 2 of Charge I are consolidated into a single specification of Charge I, to read as follows:

> Specification 1:
>
> In that Private First Class (E-3) Jeremy M. Westbrook, U.S. Army, at or near Fort Rucker, Alabama, on or about 28 February 2011, with the intent to deceive, make to Special Agent Brandon S. Shupe, an official statement, to wit: "She was talking to me and telling me to f--k her harder and Private (E2) LK was not unconscious during intercourse," or words to that effect which statement was totally false, and then known by said Private First Class Jeremy M. Westbrook to be so false.

The finding of guilty to Specification 2 of Charge I is set aside and that specification is DISMISSED.

The remaining findings of guilty, as amended, are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape that might cause us pause in reassessing appellant's sentence. Second, although appellant was sentenced by members, here, this factor carries less weight because the remaining offenses "do not address service custom, service-discrediting conduct or conduct unbecoming." *Winckelmann*, 73 M.J. at 16. Third, the nature of the remaining offenses still captures the gravamen of the original offenses and the circumstances surrounding appellant's conduct. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial. We are confident that based on the entire record and appellant's course of conduct, a panel would have imposed a sentence of at least a bad-conduct discharge, confinement for 12 months, and reduction to the grade of E-1.

Reassessing the sentence based on the noted error and the remaining findings of guilty, we AFFIRM the sentence as approved. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of the findings set aside by our decision are ordered restored.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court