UNITED STATES, Appellee

v

JACK M. STRICKLIN, Personnelman Seaman, U. S. Naval Reserve, Appellant

20 USCMA 609, 44 CMR 39

No. 23,728

June 22, 1971

*Commander Maitland G. Freed*, JAGC, USN, argued the cause for Appellant, Accused.

*Captain John P. Proctor*, USMCR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever*, USMC, and *Commander Michael F. Fasanaro, Jr.*, JAGC, USN.

## Opinion of the Court

QUINN, Chief Judge:

A military judge, sitting as a special court-martial without court members, convicted the accused of three of the eight specifications involving wrongful transactions in marihuana on which he

was brought to trial. The findings of guilty of specification 1, which concerns wrongful possession of marihuana on April 15, 1970, are unchallenged. However, the validity of those of the other offenses (specification 2, which alleges wrongful possession of ten ounces of marihuana aboard the U.S.S. WICHITA on April 14, 1970, and specification 5, alleging the sale of marihuana aboard the ship on the same day to Quartermaster Second Class Burnett) is contested. The accused contends certain evidence was improperly admitted against him and that the evidence is insufficient to corroborate his pretrial confession of these offenses.

Quartermaster Burnett's efforts to sell marihuana aboard the U.S.S. WICHITA, on April 14th, led to an investigation by agents of the Naval Investigating Service. The accused was one of those questioned. After full and proper advice as to the right to remain silent and the right to counsel, the accused confessed that, while on leave several weeks earlier, he had purchased thirty "lids" of marihuana at the cost of five dollars a lid. A lid is approximately one ounce. The lids were concealed in a large can and later were stored in the accused's locker in a "civilian locker club" ashore, while the accused "contemplat[ed] selling them." On April 14th, he agreed to sell ten lids at ten dollars each to Burnett. About 4:00 p.m. on April 14th, he removed the ten lids from the locker club, and turned them over to Burnett aboard the ship. Sometime after the crew was paid on April 15th, Burnett gave him one hundred dollars, but did not "identify to whom he had sold the marihuana." The accused indicated that the remaining lids were still in his locker. He consented to a search and, accompanied by two agents, went to the locker club. He opened the locker and pointed out the container. Twenty-one cellophane bags of material, later identified as marihuana, were found in the container. Each bag was "tightly rolled" into a cylindrical shape and "sealed with scotch tape."

At trial, no objection was made to the admission into evidence of the con-

fession and the twenty-one bags of marihuana. However, objection was made to evidence offered to corroborate the accused's confession that he brought ten bags of marihuana aboard the WICHITA and sold them to Burnett. Defense counsel contended the corroborative evidence was irrelevant. Later, in final argument, he maintained that all the independent evidence was insufficient to corroborate the accused's confession to these two charges. Both objections were overruled.

Burnett was called as a Government witness. Other than admitting that he knew the accused, he invoked his right against self-incrimination and refused to testify whether he had even seen the accused on April 14th. As a result, the Government resorted to the evidence calculated to show that Burnett had ten lids of marihuana aboard the ship and that he sold a sufficient number between April 14th and payday of April 15th and collected enough money in that period to be in a position to pay the accused the amount the accused said he had been paid.

Seaman Blanchard testified that on the night of April 14th Burnett asked him whether he desired to buy marihuana. Blanchard refused. Later, he was questioned about Burnett's offer by the executive officer of the ship and Naval Investigating Service agents. Pursuant to instruction, Blanchard went to Burnett to ask if he "could get some stuff." Burnett replied affirmatively, and told Blanchard he would give it to him the next morning, which was payday, and that Blanchard could give him the purchase price after he had been paid. The purchase price was fifteen dollars. As agreed, Blanchard received a cellophane bag from Burnett about 8:30 or 9:00 a.m., and sometime between 10:00 and 11:00 a.m., Burnett "was waiting outside the payline" in the "hallway." After Blanchard was paid, he gave Burnett fifteen dollars; he saw Burnett "mark . . . [his] name off" in a "green book." Blanchard also observed two other seamen, Lucas and Bugnaski, give money to Burnett. In each instance, Burnett made an entry

in his green book. The book was identified by Blanchard, and was admitted into evidence without defense objection.

Seven names were listed in the green book on a single page. Each had the number fifteen written after it. Blanchard identified his name. It was written "BLANCH." Also in the book, crossed out, were the names "LUCA" and "HEND." Three other entries in the book were "DAR-15," "McCAR-15," and "BUG-15." The latter two names were also crossed out. Other testimony indicated that Seaman Brown was searched aboard the WICHITA. On his person was a cellophane bag of marihuana "secured with scotch tape," "tightly rolled," and "identical in appearance" with the cellophane bags of marihuana taken from the accused's locker. Seaman Bugnaski's locker aboard the ship was searched and a cellophane bag of marihuana "identical in appearance to that . . . found on BROWN earlier" was discovered. The effects of Seaman Hendricks were searched and a cellophane bag "identical in appearance to that previously stated" was found; it, too, contained marihuana. Lucas' locker aboard the ship was searched, and a cellophane bag of marihuana was discovered; a photograph of the bag, admitted as a prosecution exhibit, indicates a striking similarity to the bags taken from the accused. "[A] cellophane bag [of marihuana] identical . . . to the other" bags discovered in the investigation was found in a search of Seaman McCarrick's locker. Burnett's locker aboard the WICHITA was also searched. Four cellophane bags of marihuana "similar to the other items" were discovered.

Defense counsel objected to the admission in evidence of the bags of marihuana obtained from the other members of the WICHITA crew. He contended that this evidence was irrelevant to the accused's offenses. Subsequently, arguing the sufficiency of the evidence to corroborate the accused's confession, he maintained that it indicated only that "some men purchased" marihuana from Burnett, but Burnett, counsel insisted, could have gotten "his marihuana from another source." Trial counsel argued that the evidence indicated that Burnett had a total of ten cellophane bags of marihuana, the four taken from his locker and the six sold to others, as established by the crossed-out names in the green book, and that all these bags were identical in appearance to those taken from the accused. As trial counsel viewed the evidence, it specifically and directly corroborated the accused's confession that he had ten bags of marihuana aboard ship and he sold them to Burnett. Essentially, the same arguments are advanced on this appeal.

Absent a charge of conspiracy or joint action, it is certainly arguable that possession of contraband by one person is irrelevant to a charge of possession or wrongful disposition of the same kind of contraband by another. However, evidence which is otherwise inadmissible against a particular accused can be pertinent to corroborate his confession. Hagan v United States, 245 F2d 556 (CA5th Cir) (1957). This concept has had specific application to a situation like that present here. Perhaps the leading case on the subject is Wong Sun v United States, 371 US 471, 9 L Ed 2d 441, 83 S Ct 407 (1963).

In *Wong Sun*, the defendant was charged with the knowing transportation and concealment of heroin illegally imported into the country. Yee was arrested by Federal agents and about an ounce of heroin was found in his home. Yee said the drug had been brought to his home by two persons, one of whom was later identified as Wong Sun. The Court of Appeals held that the circumstances of Yee's possession were sufficient to show that someone had illegally transported the drug. It concluded that the evidence was sufficient to corroborate Wong Sun's confession that four days before his arrest he had delivered an ounce of heroin to Yee. Although the Supreme Court of the United States reversed Wong Sun's conviction, it did so on another ground. So far as the relevance of the circumstances of Yee's possession to proof of the charge against Wong Sun

was concerned, the Supreme Court recognized the validity of the Court of Appeals' determination. *Id.*, 371 US, at pages 492–493.

In United States v White, 223 F2d 674 (CA2d Cir) (1955), certiorari denied, 350 US 888, 100 L Ed 782, 76 S Ct 143 (1955), the defendant was charged with selling narcotics. Before trial, he confessed to the offense. The purchaser, a Government informant, died before trial. At trial, Government agents testified that the informant had been searched and found to have no drugs in his possession before he went to see the accused; shortly thereafter, he returned with narcotics in his possession. No one witnessed defendant's delivery of the narcotics to the informant and the evidence, as the Court noted, did not "exclude the possibility that the informer . . . may have obtained the drug from someone other than the" defendant. *Id.*, 223 F2d, at page 675. The Court of Appeals concluded that the evidence corroborated the accused's confession.

Possession of a drug by one person as relevant to, and corroborative of, a confession by another that he was the source of supply was also considered in United States v Trabucco, 424 F2d 1311, 1313, 1320 (CA5th Cir) (1970). There, the defendant was charged with illegal importation of cocaine while a member of the crew of a foreign vessel that had docked at Tampa, Florida. He confessed that while in Chile he had been approached and offered one thousand dollars to take a package of cocaine into the United States. He agreed. He was informed someone would board the vessel at midnight when it arrived in Tampa. A person whom he recognized as one Bravo came to the vessel at midnight. He and Bravo took the package to a bus depot, where it was placed in a " 'safety box.' " A witness testified that Bravo was with the defendant shortly after the vessel docked; later Bravo attempted to ship a quantity of cocaine from Tampa by plane. The Court of Appeals concluded that the defendant's confession "dovetail[ed] perfectly with all these established facts," and these facts corroborated the confession. See also United States v Braverman, 376 F2d 249 (CA 2d Cir) (1967), certiorari denied, 389 US 885, 19 L Ed 2d 182, 88 S Ct 155 (1967).

Indisputably, the evidence demonstrates that Burnett had possession of marihuana aboard the WICHITA. It also demonstrates that Burnett sold marihuana to others aboard the ship. Unquestionably, Burnett had some source of supply. The accused confessed he was that source. We need not decide, as the Supreme Court did not decide in *Wong Sun,* whether the mere possession of marihuana by Burnett would alone corroborate the accused's confession of possession and sale aboard the WICHITA. Wong Sun v United States, 371 US, at page 492. Other circumstances of correspondence between Burnett's possession and the accused's confession are present. First, Burnett's bags of marihuana were "identical in appearance" to those the accused said he sold to him. Secondly, there is agreement between the number of bags the accused said he sold and those possessed by Burnett, including the similarity in their weight. Thirdly, there is the fact that Burnett offered the marihuana for sale aboard the ship the very evening the accused said he had delivered it to him. Finally, Burnett collected the money for his sales as each of his customers came from the pay line, which corresponds to the accused's statement as to when he was paid by Burnett. Logic and judicial precedents compel the conclusion that these points of agreement are sufficient to corroborate the accused's confession that he had possession of, and sold, ten lids of marihuana to Burnett aboard the U.S.S. WICHITA.

Turning to the sentence, the accused contends he was prejudiced by erroneous advice in the post-trial review submitted by the base staff judge advocate to the general court-martial authority. The pertinent part of the review is as follows:

"The accused pleaded not guilty to all charges and specifications. The court, composed of a military judge,

found the accused guilty of Specifications 1, 2, and 5, *guilty of Specifications 3, 4, 6, and 7 of the original charge and not guilty of the additional charge.*" [Emphasis supplied.]

The advice is patently erroneous. The accused was found *not guilty* of specifications 3, 4, 6 and 8 █ (originally the Additional Charge, but renumbered at trial), and specification 7 was dismissed as multiplicious. Conceding the error, appellate Government counsel contend that a fair reading of the entire review makes it manifest that the accused was convicted only of three specifications and compels the conclusion that the supervisory authority was not misled. See United States v Morris, 8 USCMA 755, 756, 25 CMR 259 (1958).

We have carefully considered the review. We have similarly considered the opinion of the Court of Military Review, which specifically recognizes that the accused was convicted of only three offenses. We are satisfied that the staff judge advocate's error did not result in approval of a sentence that would not otherwise have been approved. Cf. United States v Lopes, 20 USCMA 495, 43 CMR 335 (1971); United States v Hamilton, 20 USCMA 519, 43 CMR 359 (1971).

The decision of the United States Navy Court of Military Review is affirmed.

Judge DARDEN concurs.

FERGUSON, Senior Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree that there is in this record sufficient independent evidence to corroborate the accused's confession. Paragraph 140*a*(5), Manual for Courts-Martial, United States, 1969 (Revised edition). However, I do not agree with my brothers' holding that the accused was not prejudiced as to sentence by the erroneous advice in the post-trial review of the staff judge advocate. United States v Lopes, 20 USCMA 495, 43 CMR 335 (1971); United States v Hamilton, 20 USCMA 519, 43 CMR 359 (1971).

The supervisory authority is, in the court-martial process, an independent judicial officer with no legal experience. He is totally dependent upon the advice of his staff judge advocate. When that advice is patently erroneous, as my brothers acknowledge, "we cannot say that this accused received the type of post-trial review contemplated by the Code." United States v Hamilton, supra, at page 520. See generally, United States v Rivera, 20 USCMA 6, 42 CMR 198 (1970), and cases cited therein.

In United States v Podgurski, 15 USCMA 491, 35 CMR 463 (1965), and United States v Lopes, supra, this Court unanimously held that a similar error was prejudicial *per se* and required a new and accurate post-trial review. Consideration and rejection of an allegation of prejudice by the Court of Military Review in *Lopes,* did not deter us from holding to the contrary in that case, in a per curiam opinion issued just two months ago, where the supervisory authority was erroneously advised that the accused was also convicted of a single specification alleging the use of disrespectful language toward a superior noncommissioned officer.[1] In this case, the erroneous advice extended to four specifications of unlawful sale of marihuana to four separate seamen aboard the U.S.S. WICHITA. The military judge had dismissed one of the specifications and granted a defense motion for a finding of not guilty as to the other three. There remained three other specifications of which the accused was convicted involving wrongful transactions in marihuana. His sentence to the

---

[1] Lopes was found guilty of one specification each of willful disobedience of a lawful order of a superior noncommissioned officer and absence without leave. He had been found not guilty of the specification alleging disrespectful language. His sentence extended to a bad-conduct discharge, confinement at hard labor for three months, and forfeiture of $25.00 per month for a like period.

maximum punishment imposable by the special court-martial, to which the case was referred by the convening authority, remains unchanged. While the Court of Military Review in this case only considered the three offenses of which the accused was found guilty, in determining the appropriateness of the sentence, it did not have before it the question of prejudice at the supervisory authority level as it did in *Lopes*. The issue in this case was noticed and raised for the first time before this Court. Cf. United States v Hamilton, supra.

How is anyone to know what sentence the supervisory authority would have approved had he been correctly advised as to the results of the trial? Not knowing, there is, in my opinion, general prejudice. United States v Podgurski, United States v Lopes, and United States v Hamilton, all supra. Inaccurate advice at lower review levels should not be glossed over and where there is doubt as to the prejudice the issue should be resolved in favor of the accused. United States v Rivera, supra.

I would reverse the decision of the Court of Military Review and direct that a new post-trial review and action by the supervisory authority may be ordered.