UNITED STATES

v.

Victor H. HARJAK, 549 88 8048, Electronics Technician Chief (E–7), U.S. Navy.

NMCM 90 0937.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 21 June 1989.

Decided 18 June 1991.

LT Richard D. Zeigler, JAGC, USNR, Appellate Defense Counsel.

Capt M.K. Schaller, USMC, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before ALBERTSON, Senior Judge, and LANDEN and LAWRENCE, JJ.

ALBERTSON, Senior Judge:

At a general court-martial composed of officer and enlisted members, appellant was found guilty contrary to his pleas of four specifications each of sodomy and indecent acts upon his 10 year-old biological daughter, the victim, in violation of the Uniform Code of Military Justice (UCMJ), Articles 125 and 134, 10 U.S.C. §§ 925, 934, respectively. The convening authority approved the adjudged sentence to 8 years of confinement, reduction to pay grade E-1, and a bad-conduct discharge.

I

Appellant divorced his first wife when his daughter was 3 years old. The mother remarried, and 6 years later discovered that her husband, the victim's stepfather, had been sexually abusing her. The State of Iowa intervened, removed the victim from the home, and granted custody to appellant who lived in California, with the requirement that the victim continue under some form of government supervision and receive psychological treatment for the sexual abuse suffered.

On 13 October 1988, 4 months after the victim moved in with appellant and his new family (stepmother and three young children), she was removed from appellant's home and placed into foster care after alleging to a social worker and a Naval Investigative Service (NIS) special agent that appellant had sodomized her and engaged in indecent acts with her. The evidence indicates that she gave the NIS special agent a pair of panties that contained the remnants of seminal fluid ejaculated by someone who has the same blood type as appellant.

On 17 October 1988, NIS Special Agent Carol Cacciaroni interviewed the victim at

her foster home concerning her relationship with appellant. No one else was present at the interview, which was recorded after a 20–minute discussion with the victim off the record. The recording was transcribed, sworn to, and adopted by the victim in February 1989, 4 months later. The record is unclear whether the defense ever requested or obtained an opportunity to question the victim about the allegations or about the conditions under which the interview was made. Subsequent to this interview of the victim, appellant made two confessions to NIS Special Agent Dortch. The first was a statement written in appellant's handwriting and signed and sworn to by appellant, followed by a three-page typewritten statement also signed and sworn to by appellant.

## II

All assignments of error focus on the admissibility of the transcribed NIS interview of the victim as corroboration of appellant's two confessions to the charged offenses. At trial, the government's motion *in limine* to admit the transcript of the interview cited, as a basis for admissibility, the victim's unavailability and the residual hearsay rules, Military Rules of Evidence (Mil.R.Evid.) 803(24), 804(b)(5), Manual for Courts–Martial (MCM), United States, 1984. The government sought admission of the transcribed interview as a substitute for the victim's trial testimony. The defense argued that the transcript was inadmissible hearsay, that the requisite showing of unavailability of the declarant was not made, and that admitting it in place of the victim's in-court testimony was a violation of appellant's right to confront witnesses under the Sixth Amendment. The military judge admitted the transcript as corroboration of the appellant's two confessions after he declared that the victim was unavailable within the meaning of Mil. R.Evid. 804(b)(5) and the statement possessed sufficient particularized guarantees of trustworthiness equivalent to those supporting the other exceptions to the hearsay rule allowing the use of out-of-court statements as substantive proof of the matter asserted.

On review, appellant first argues that the military judge erred by admitting the transcript of the interview between the victim and the NIS special agent. He claims, and the government concedes,[1] that the requisite showing of the victim's unavailability as a witness for her out-of-court statement to be admitted under the residual exception to the hearsay rule was not made. Mil.R.Evid. 804(a)(4), (b)(5).

■ We agree with the appellant's assertion and the government's concession and find that the evidence before the military judge failed to establish that a then presently existing physical or mental infirmity or illness rendered the victim unavailable to testify at trial. Mil.R.Evid. 804(a)(4). The basis for the military judge's ruling the victim an unavailable witness was the unauthenticated medical reports that he erroneously admitted over defense objection.[2] These reports detailed the victim's physical and psychological condition 6 months prior to trial. Notwithstanding the military judge's empathetic recitation of the hideous occurrences of the victim's young life, and his desire for the court-martial not to endanger her mental and physical health, those reports were hearsay and irrelevant to the victim's current mental and physical status. Furthermore, even if they had been properly admitted, the reports did not establish that the victim's face-to-face confrontation with appellant in the courtroom would cause her to suffer mental or physical harm. *See Maryland v. Craig*, 497 U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

## III

■ Because the victim was erroneously declared unavailable to testify, the admis-

---

1. During oral argument, government counsel conceded that the military judge improperly found the victim unavailable to testify at trial.

2. Not only were the medical reports not properly authenticated, there is no evidence of record establishing that the reports were done by qualified experts or that the opinions expressed in the reports relied upon proper facts or data. Mil.R.Evid. 702 and 703.

sion of her hearsay statements to the NIS special agent must be analyzed under Mil. R.Evid. 803(24), the residual hearsay rule that permits the admission of hearsay statements into evidence regardless of whether the declarant is available to testify at trial. Under Mil.R.Evid. 803(24), a hearsay statement not specifically covered by any of the other exceptions to the hearsay rule but having equivalent particularized guarantees of trustworthiness may be admitted into evidence if offered as evidence of a material fact and if more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. Therefore, the issue of the victim's medical and psychological condition, and her ability to testify meaningfully without serious psychological or physical harm, might well be determining factors concerning the admissibility of her hearsay statements under this exception to the hearsay rule as well. *See* Mil.R.Evid. 803(24)(B).

■■■ The military judge, in considering whether the victim's statements to the NIS agent possessed "particularized guarantees of trustworthiness" justifying their admission under the residual exception to the hearsay rule, erroneously considered corroborating evidence unrelated to the circumstances surrounding the making of the statements. The inherent trustworthiness of hearsay statements to be admitted under Mil.R.Evid. 803(24) can only be determined by examination of the totality of the circumstances surrounding the making of the statement.[3] These circumstances must eliminate the possibility of fabrication, coaching, or confabulation and, by revealing the declarant to be particularly worthy of belief, render adversarial testing of those statements superfluous. *Idaho v. Wright,* 497 U.S. ——, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638, 655 (1990). When, as

here, the justification for hearsay statements which could only be admitted under Mil.R.Evid. 803(24) encompasses factors which either did not exist at the time of the making of the statement or include those which may be added by hindsight or arise from subsequent corroboration of the criminal act, the Confrontation Clause of the Federal Constitution's Sixth Amendment requires exclusion of the out-of-court statement. *Id.,* 110 S.Ct. at 3150, 111 L.Ed.2d at 656.[4]

■■■ We find that the following factors delineated by the military judge in his essential findings of fact to support admission of the transcript should not have been considered since they do not bear upon the circumstances surrounding the rendition of the victim's statements or are not supported by the record: (a) the victim had no reputation nor motive for lying; (b) she had never refused to testify concerning the charged offenses; (c) she had never retracted her statements; (d) her first report was to a social worker, not a policeman; (e) each of her statements were consistent; (f) appellant twice confessed to these offenses; (g) her panties were stained by semen; and (h) her first statement to a social worker on 13 October was an excited utterance.[5] Further, we do not agree with the military judge that the facts of record support a conclusion that the conditions under which the verbatimly transcribed statement was given evidenced bipartisanship and served the purposes of cross-examination. The NIS special agent admitted during cross-examination that she taped the victim's statement to build a criminal case against appellant. Other factors listed by the military judge do concern the circumstances surrounding the making of the statement, are factually supported by the record, and do support its

---

**3.** Although the military judge did his "particularized guarantee of trustworthiness" analysis under Mil.R.Evid. 804(b)(5), the standard for analysis for Mil.R.Evid. 803(24) is the same.

**4.** We note that a hearsay statement admitted at trial is much less likely to offend the Confrontation Clause when the declarant is available to testify under cross-examination.

**5.** This factual conclusion is a close call in light of *United States v. Arnold,* 25 M.J. 129 (C.M.A. 1987) *cert. denied* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1987); but, we give the military judge, and thus the government, the benefit of the doubt.

reliability. Those factors were that she understood the difference between the truth and a lie and the transcript itself reveals the conduct of the interview. Those two factors even taken together, are insufficient to guarantee the trustworthiness of the statements.

 Thus, we find that the military judge's consideration of the factors not supported by the record and not bearing upon the circumstances surrounding the taking of the victim's statement had a substantial effect on his ruling to admit the evidence. The admission of the statements therefore constituted an abuse of discretion by the military judge. The victim's statements to the NIS special agent, admitted at trial in the form of a transcription of a tape recording, was therefore inadmissible under Mil.R.Evid. 803(24), and should not have been considered as corroborating evidence of appellant's confessions to sodomizing and committing indecent acts with his daughter.

 Additionally, exclusion of the victim's out-of-court statements is required (1) because neither at nor prior to trial did appellant have the opportunity to challenge the truth of those statements; and (2) because statements sought to be admitted under the residual exception to the hearsay rule are not considered under case law to be as reliable as other statements qualified for admission under more established exceptions to the hearsay rule. Therefore the victim's statements are insufficiently reliable to be used as corroboration for appellant's confessions to sodomizing and committing indecent acts on his daughter, despite his confessions being made *after* he was aware of the allegations made by his daughter and *after* he was properly warned that any statements made by him could and would be used against him in criminal proceedings. *Id.* The admission of the victim's statements as corroboration for appellant's confessions violated the Confrontation Clause of the Sixth Amendment, and was not harmless beyond a rea-

sonable doubt as we cannot say that the improper admission of these statements had no effect on the members in reaching their findings. *United States v. Brabant,* 29 M.J. 259 (C.M.A.1990).

### IV

 The fact-finder must be convinced beyond a reasonable doubt of the accused's guilt. An accused cannot be convicted on his confession alone; the confession must be corroborated. Corroboration consists of two aspects. One aspect relates to whether sufficient facts guaranteeing the truthfulness of the confession have been shown by the prosecution such that it is admissible as evidence before the fact-finder. Mil.R.Evid. 304(g). The second relates to whether the fact-finder has facts before it sufficient to establish as a matter of law that it is convinced beyond a reasonable doubt that the accused is guilty of the offense to which he confessed. *Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *Warszower v. United States,* 312 U.S. 342, 61 S.Ct. 603, 84 L.Ed. 876 (1941); *United States v. Rounds,* 30 M.J. 76, 81 n. 3 (C.M.A.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). The status of corroboration evidence in the military is basically the same. A confession of an accused servicemember, or any part of it, may be considered as evidence against him during the merits of a case only if independent evidence, direct or circumstantial, has been introduced that corroborates the essential facts confessed to justify an inference of their truth. *Rounds;* Mil.R.Evid. 304(g)(1). The purpose of the corroboration rule is to establish the truthfulness or trustworthiness of the confession, to aid in assuring the finder of fact that the confession was not involuntarily given, and not independently to prove the elements of the offenses. *United States v. Melvin,* 26 M.J. 145 (C.M.A.1988). The quantum of evidence needed to satisfy the requirements of Mil.R.Evid. 304(g) is slight.[6] *United States v. Yeoman,* 25 M.J.

---

**6.** The once required *corpus delicti* rule, *Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954), is no longer applicable; but

independent corroborative evidence is still required to implicate the accused to the extent

1, 4 (C.M.A.1987). Thus, without corroboration independent of the victim's hearsay statements to NIS, each of the charges and specifications to which appellant confessed must be set aside and a rehearing authorized.

 Despite appellant's claims at trial that his motivation for confessing was to secure counselling, resulted from mental threats and physical discomfort, and promises that he would not be prosecuted, the military judge refused to suppress the confessions, finding that they were voluntarily made. We agree with this finding. Appellant's confessions to NIS Special Agent Dortch were first in his own handwriting, then followed by an oral confession transcribed by Special Agent Dortch. It is difficult to understand why he would confess to secure counselling for sexual molestation of his own daughter if he had not sodomized her, committed indecent acts with her, and ejaculated upon her, repeatedly, as his confessions detail. His confessions admit to matters not mentioned by his daughter in her statements, blame the victim for encouraging or not stopping him from molesting her, and state that he felt she was receiving sexual gratification from his acts as well. Appellant, at the time a chief petty officer, is shown by his confessions to be a mature, intelligent, articulate man who suffered from no mental infirmity. His confessions are clear, internally consistent and in no place contradict each other. There is no evidence that appellant has a history of rendering false confessions to serious offenses. There is no indication that he falsely confessed to protect anyone else from these accusations. Nevertheless, despite no indication in the record that external compulsions made him admit to these offenses and that his confessions were unrebutted at trial, present law requires they must be corroborated by independent evidence which tends to prove the commission of the crimes alleged, and not, as the government suggests in its brief, legally determined to be reliable and a basis for conviction due to their agreement in relevant aspects to inadmissible

that the fact-finder is satisfied his confession is

hearsay statements. Because the victim's statements were improperly admitted into evidence, they may not be legally considered as corroboration of appellant's confessions. Thus, we must determine whether the record contains admissible independent evidence to corroborate appellant's confessions.

 NIS Special Agent Cacciaroni testified at trial on the merits on direct examination that she interviewed the victim and spoke with appellant concerning his daughter's allegations of a sexual assault on 13 October. The agent testified as to these conversations on direct examination as follows:

Q. Okay, now at that point of the conversation you had asked [the victim] "Where is his thing, where is it on you?" and she said, "Right there." Was she pointing at the time?

A. Yes, she was.

Q. In what area was she pointing?

A. She was pointing to her groin.

. . . .

Q. Now during the course of that conversation, she had discussed some panties. And when did you become aware of these panties? Which panties were was referring to?

A. She was referring to the morning she said that he (sic) father had touched her. She kept the panties and put them in her little book pack and brought them to school.

Q. And did you take those to—

A. Yes, I did.

Q. Now did you ever had (sic) a discussion with Chief Harjak?

A. Yes, I did.

Q. An when did that take place?

A. That took place, I believe, on the 14th of October '88.

Q: And did you ask Chief Harjak about these panties?

A: Yes, I did.

Q: What was the question you asked him?

true and that a crime was committed.

A: I told him I had seized [the victim's] panties from the morning of the 12th, I believe, and told him that it appeared there was a semen stain on the panties.

Q: How did the chief respond to that?

A: He told me that he and his wife used condoms and [the victim] could have possibly gone to the trash can, removed the condom and poured the semen onto her panties.

Appellant's confessions detail that on four or five occasions over a period of time after the victim had returned to his custody, he had rubbed her vagina, removed her panties, or rubbed his penis over her vagina, or ejaculated upon her. He noted that she did not complain even when he orally copulated with her, but encouraged him to continue. He wrote that the morning of the day the victim told the social worker of appellant's sexual molestation and was removed from his custody, the victim again came to his bed and the series of events had repeated themselves as far as the molestation was concerned. The above-quoted testimony of NIS Special Agent Cacciaroni is the only relevant evidence remaining on the merits that can be considered as corroboration of appellant's confessions. We find this remaining evidence insufficient as a matter of law to corroborate the appellant's confession to the events of the morning of the 13th of October. Although we find that appellant's confession was voluntarily made, and that his explanation of the presence of semen on his daughter's panties is absurd, this latter implicit acknowledgement of guilt by him to the NIS special agent who was attempting to make a case against him and to whom the victim's inadmissible out-of-court statement was made cannot be used to corroborate the former confession. It is not *independent* evidence.

 We also cannot make the leap of legal faith that the NIS special agent's unobjected-to hearsay testimony about her taking the panties on the day in question and that she told appellant the stain on them was semen is sufficient to constitute even slight evidence of corroboration. *See Rounds*, 30 M.J. at 81 n. 3. Therefore, because the inadmissible out-of-court statements of the victim were in fact admitted, and despite the fact that the evidence as a whole[7] appears factually sufficient to sustain a conviction, we cannot say that the legal error committed by the admission of those out-of-court statements did not materially prejudice the appellant's substantial rights. *See* Article 59, UCMJ, 10 U.S.C. § 859.

Accordingly, we set aside the findings and sentence. A rehearing on the offenses is authorized by the same or different convening authority.

Judge LANDEN concurs.

LAWRENCE, Judge (concurring in part and dissenting in part):

I concur with the majority opinion except in its finding that the appellant's confessions are uncorroborated as to all of the offenses of which appellant was convicted. I conclude that appellant's detailed and entirely believable confessions are corroborated sufficiently by independent evidence in the record of trial as to the findings of Specification 4 of Charges I and II. I am convinced beyond a reasonable doubt of appellant's guilt of those two offenses and would affirm them.

Independent corroborative evidence is required in order to ensure the trustworthiness of a confession. *See United States v. Rounds*, 30 M.J. 76, 80 (C.M.A.1990). Distrust of confessions has a long history in England and the United States, the reasons for which are not hard to discover. Police methods for extracting confessions have until recently often been coercive if not at times brutal. Mentally ill persons may be especially susceptible to coercive or simply clever methods of interrogation, or they may confess to crimes that they did not

---

7. The evidence that we refer to here is that presented during the Government's motion *in limine*. For some unexplained reason, the Government failed to present the evidence on the merits. *Rounds*, 30 M.J. at 81 n. 3. Additionally, the military judge never made a Mil.R. Evid. 304(g) ruling that sufficient independent evidence was established by the government to corroborate the appellant's confession because the issue was not raised at the trial level.

commit for reasons only they can fully comprehend. Some persons may confess to shield someone else from prosecution or to gain some supposed benefit that might otherwise be unavailable. Thus, courts developed a rule that independent evidence must be presented in court to show that the confession is based in fact since a conviction based solely on a confession was deemed to be unreliable.

In recent years, these concerns have lessened. Police practices in obtaining confessions are now open to courtroom scrutiny, and constitutional protections and the exclusionary rule provide reasonably effective means to preclude conviction based on coerced confessions. If any question exists regarding an accused's mental status, courts may order mental examinations to discover any condition that may have influenced the accused to confess falsely or might hinder the accused's ability to understand the issues in court or cooperate with his counsel to exclude the confession from evidence. Finally, prosecutors in modern America, especially military ones, have clear ethical obligations to see that justice is done and to examine all available evidence to ensure that an innocent confessor is discovered. Whatever merit once existed in a strict corroboration requirement is brought into question by recent developments in constitutional law, changes in criminal procedure, and advances in legal ethics.

As a result, the federal courts have rejected the "elements-corroboration" or corpus delicti rule for corroboration that still exists in many states. Instead, federal and military courts now employ the "trustworthiness-corroboration" test. *See Rounds,* 30 M.J. at 81; *United States v. Melvin,* 26 M.J. 145, 146–47 (C.M.A.1988). As a result, today the standard for corroboration is substantially lower than it once was. Now a confession may be admitted into evidence if "independent evidence raise[s] an inference of truth as to the essential facts stated in the confession." *Rounds,* 30 M.J. at 80; *see* Mil.R.Evid. 304(g)(1). The independent evidence need not be shown by even a preponderance of the evidence, *see Smith v. United States,* 348 U.S. 147, 156, 75

S.Ct. 194, 199, 99 L.Ed. 192 (1954), and in military courts the required amount of such evidence is very slight indeed. *See Melvin,* 26 M.J. at 146.

In generally assessing the trustworthiness of appellant's confessions, and thus the reliability of any conviction based on them, I begin by noting that appellant's handwritten and typed confessions are detailed, internally consistent, and uncontradicted by other available evidence. The voluntariness of his confessions was fully litigated at trial, and the military judge found, correctly in my opinion, that the confessions were voluntarily made. Prior to trial, appellant was evaluated at a Rule for Courts–Martial 706 board, the report of which suggests no mental condition that would lead appellant to falsely confess to these crimes. Nothing in the record of trial suggests that appellant confessed to protect another person or any other motive for confessing other than an awareness of his patent guilt. The military judge, but not the members as triers of fact, became aware that appellant had taken a polygraph examination that revealed deception on those salient questions that went to his guilt of the offenses charged. In short, the record of trial is replete with evidence that in general establishes the trustworthiness of these confessions. The question in this review is whether sufficient corroborating evidence was introduced before the trier of fact to satisfy the requirement for corroboration as it presently exists in military law.

Military Rule of Evidence 304(g) effected a "major procedural change" regarding the admissibility of confessions in military courts. The current rule is that "[t]he military judge alone shall determine when adequate evidence of corroboration has been received. Corroborating evidence usually is to be introduced before the admission or confession is introduced but the military judge may admit evidence subject to later corroboration." Mil.R.Evid. 304(g)(2). The rule and accepted trial practice indicate that under current procedures corroborating evidence may be presented prior to or outside the trial on the merits.

The defense may move *in limine* to prevent introduction of the confession based on inadequate independent evidence, *see, e.g., United States v. Baum,* 30 M.J. 626, 628 n. 5 (N.M.C.M.R.1990), or the government may seek a determination prior to trial since admission of a confession often bears importantly on how much available evidence the government will choose to present to the trier of fact on the merits. Thus, the military judge may make a preliminary ruling based on the evidence presented to him in an Article 39(a) session to permit both sides to adequately plan their cases.

The trier of fact now considers the "type and amount of evidence introduced as corroboration" only as a factor in "determining the weight, if any, to be given to the admission or confession." Mil.R.Evid. 304(g)(1). There is no requirement that the evidence of corroboration introduced before the trier of fact be the same in amount, type, or persuasiveness as that that may have been considered by the military judge in an Article 39(a) session in determining whether the requirement for corroboration is met. Indeed, if the military judge in an Article 39(a) session decides that the confession is corroborated, the government is free to decide what corroborating evidence it desires to present on the merits as a matter of trial tactics, although usually the government will choose to put on all the evidence that is available to add to the weight of the confession. All that is required is that sufficient independent evidence be introduced to convince the trier of fact that the accused told the truth in his confession and that the extrinsic evidence and the confession or admission itself be sufficient evidence to support a finding of guilt beyond a reasonable doubt. *Melvin,* 26 M.J. at 147.

During the Article 39(a) session at which the defense sought unsuccessfully to suppress the admissibility of appellant's confession, evidence was admitted without defense objection that showed that Jennifer brought a pair of her panties to school in her book pack on 13 October. On the 14th, the panties were given to Special Agent (SA) Cacciaroni. At that time, SA Cacciar-

oni noticed a stain on them that appeared to be semen. SA Cacciaroni placed the panties into evidence and sent them to a forensic laboratory in California. The test revealed that the stain was semen and that the blood type derived from the sample was the same as appellant's. Record at 83–85. Appellant's typed confession of 29 November 1988 details a common manner of molestation in which appellant ejaculated outside the victim's vagina such that semen would likely be found on the victim's panties that ordinarily were pulled down but not off.

Corroboration is not required as to the identity of the perpetrator of a crime, it is only required as to the existence of the crime itself. *See United States v. Yates,* 24 M.J. 114 (C.M.A.1987). The fact that SA Cacciaroni seized Jennifer's panties that contained an apparent semen stain shortly after the alleged molestation occurred and the stain was subsequently confirmed to be semen by a laboratory test that also matched the blood type to that of appellant amply corroborates the existence of the crime. Young girls do not produce semen; its presence on a 10–year old girl's panties raises a strong inference that the girl has been sexually molested. At this point in the trial, all parties were fully aware that the government had introduced sufficient evidence to allow admission of the confessions before the trier of fact and that the government could readily corroborate appellant's confessions during the trial on the merits even without Jennifer's statements, at least as to Specification 4 of Charges I and II.

Nonetheless, the law requires that some minimal evidence of corroboration be presented to the trier of fact even after sufficient evidence to permit admission of the confession or admissions is introduced before the military judge in an Article 39(a) session; however, that portion of SA Cacciaroni's testimony given on the merits that is quoted by the majority meets that requirement. The members could fairly conclude from SA Cacciaroni's testimony that shortly after the alleged molestation she seized a pair of Jennifer's panties that had

588

an apparent semen stain on them. This independent evidence raises an inference of the truth of this portion of appellant's confession. Had Jennifer's statements not been admitted this evidence along with appellant's extremely convincing confessions would surely have resulted in appellant's conviction of the offenses contained in Specification 4 of Charges I and II. In light of the detailed and especially convincing quality of appellant's confessions, this independent evidence establishes their truthfulness and reliability beyond any reasonable doubt.

During trial, the question of corroboration never arose for several reasons. First, Jennifer's out-of-court statements, if properly admitted, clearly corroborated the confessions. Second, it is apparent to me as it surely was to both sides that the government possessed overwhelming evidence to corroborate appellant's confessions aside from Jennifer's statements. Had the defense objected to the hearsay portion of SA Cacciaroni's testimony that concerned the panties during the Article 39(a) session, trial counsel could easily have introduced the laboratory report that proved the presence of semen and the match with appellant's blood type. Probably no expert needed to be called to interpret the report since the presence of semen can be determined through a simple microscopic examination and blood-typing is easily comprehended by any layman. *See United States v. Murphy*, 23 M.J. 310 (C.M.A.1987). In short, even had trial defense counsel anticipated our ruling that Jennifer's statements were inadmissible, she could not have prevented the admission of substantial independent evidence in corroboration and the military judge's inevitable finding that appellant's confessions were corroborated as to these two offenses. Trial defense counsel hotly contested the admission of the statements and undoubtedly was aware that by pleading not guilty the issue of the correctness of the military judge's ruling was preserved during review and appeal of this case. At no point in this trial did defense counsel contest the existence of corroboration of appellant's confessions. It is unclear to me whether trial defense counsel saw this issue and, recognizing that it would easily be resolved in the government's favor, consciously chose not to raise the matter during the trial on the merits. If trial defense counsel had any question regarding the existence of corroboration with or without the admission of Jennifer's statements, however, she should have raised that issue at trial.[1] As trial defense counsel failed to raise the issue, I view the evidence in a light most favorable to the government in resolving this issue.

Setting aside and dismissing the other findings of guilty and affirming Specification 4 of Charges I and II, and considering both as multiplicious, I would reassess the sentence in light of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986).

---

1. Appellant's failure to allege an inadequacy of corroboration at trial or on appeal results in a question whether this issue is effectively waived under Mil.R.Evid. 103. *See Melvin*, 26 M.J. at 147.