**UNITED STATES**

v.

**Staff Sergeant Gerald BAKER, FR453–94–0203, United States Air Force.**

**ACM 28887.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 15 June 1990.

Decided 2 Oct. 1991.

Appellate Counsel for the Appellant: Captain Beverly B. Knott (argued) and Lieutenant Colonel Jeffrey R. Owens.

Appellate Counsel for the United States: Captain James C. Sinwell (argued), Lieutenant Colonel Brenda J. Hollis, and Major Ann M. Mittermeyer.

Before LEONARD, RIVES and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

Appellant was convicted in California of use of methamphetamines and marijuana,[1] mainly on the basis of his confession and the videotaped deposition of a paramour. The deposition was used both to corroborate the confession and as evidence of guilt. On appeal appellant disputes the admissibility of the deposition. We find that the United States did not make a record showing unavailability of the witness-deponent. We conclude that appellant was prejudiced, and we set aside the findings of guilty and the sentence.

The paramour, Imelda, lived in California during the period of the offenses and for a time afterwards, but then she went to her native Philippines. She returned to California at government expense to testify at this court-martial, but the trial was postponed. Trial counsel, having "no guarantee that [Imelda would] return for trial," moved for a deposition, and the military judge so ordered. *See generally*, Article 49, UCMJ, 10 U.S.C. sec. 849 (1988); R.C.M. 702; *United States v. Crockett*, 21 M.J. 423 (C.M.A.1986), *cert. denied*, 479 U.S. 835, 107 S.Ct. 130, 93 L.Ed.2d 74 (1986). During the postponement, Imelda went back to the Philippines again, but not before telling the prosecution's paralegals that she was willing to return.

The trial was set again, postponed further, and set again. The prosecution twice prepared to produce Imelda again at government expense, doing the administrative things necessary to arrange and fund her travel. The chore of communicating with Imelda to arrange her presence fell to paralegals at March Air Force Base. They contacted their paralegal counterparts at Clark Air Base, then operational in the Philippines.

A paralegal in the Philippines contacted Imelda's *husband.*[2] The Clark paralegal summarized his efforts in a teletype message to his counterparts at March. The entire text of that message follows:

On 12 June 1990, I spoke to TSgt __, husband of Imelda __. I informed him that I was in receipt of travel orders for his wife to travel to March AFB, CA. He informed me that his wife was not willing to testify or travel to March AFB.

The prosecution did not show that it did anything more to secure Imelda's appearance.

However, the prosecution still had appellant's confession. The defense objected to the confession on grounds of corroboration. *See* Mil.R.Evid. 304(g). The prosecution sought to corroborate the confession with the deposition. The military judge, sitting alone, permitted the issue to be handled in the flow of the evidence on the merits, instead of using a session solely for that issue, as would have been routine in a trial with members. *See* Article 39(a), UCMJ, 10 U.S.C. sec. 839(a) (1988); Mil.R.Evid. 104(c), 304(g)(2). *Cf.* Fed.R.Evid. 104(c). Trial counsel laid the foundation for admission of the deposition and offered it as former testimony of an unavailable witness, relying on Mil.R.Evid. 804(b)(1). It was admitted into evidence and considered on corroboration and on the merits over defense objection that the prosecution had not adequately shown Imelda to be unavailable. *See generally* Mil.R.Evid. 804(a), (b)(1). *Cf.* Fed.R.Evid. 804(a), (b)(1). The confession was then corroborated to the military judge's satisfaction and admitted.

We first address the admission of the deposition. Depositions are admissible on the merits over objection when the deponent is shown to be unavailable, Mil.R.Evid. 804(b)(1), but the proponent must

---

1. The general court-martial, composed of the military judge sitting alone, sentenced appellant to be discharged from the service with a bad conduct discharge, to be confined for 15 months, to forfeit all pay and allowances, and to be reduced to E–1. The convening authority approved the sentence as adjudged.

2. Imelda's husband was a member of the Air Force stationed at Clark Air Base. It appears that Imelda had divorced him in 1986, at the beginning of her association with appellant. It also appears that they had been remarried on her return to the Philippines, after she stopped associating with appellant.

show reasonable efforts to produce the deponent-witness for testimony in person at trial. We conclude that the deposition was inadmissible because the prosecution's showing of efforts to produce Imelda was inadequate. Admitting the deposition improperly denied appellant his constitutional right to be confronted by Imelda, an adverse witness. We conclude that the error was not harmless beyond a reasonable doubt.

## I. Availability of the Deponent–Witness

 Imelda's deposition was prosecution evidence. An accused has a Sixth Amendment right to have testimony against him given by the witness at trial, in person. Thus, while we must test an availability decision for abuse of the military judge's discretion, *see, e.g., United States v. Hampton*, 33 M.J. 21 (C.M.A.1991), the constitutional aspect adds special importance to this issue: This is not simply an evidentiary issue.

The rules do not require the impossible. Military Rule of Evidence 804(b) permits substitutes for personal appearance,[3] one of the best of which is a deposition. However, the substitutes under Rule 804 all depend upon "unavailability," that (in this case) the witness "is absent from the hearing and the proponent ... has been *unable* to procure the declarant's attendance *by process or other reasonable means.*" Mil. R.Evid. 804(a)(5) (emphasis added). *See* Article 49(d), UCMJ, 10 U.S.C. sec. 849(d) (1988); Mil.R.Evid. 804(a)(6); *cf.* Fed. R.Evid. 804(a)(5). *See also United States*

*v. Cordero*, 22 M.J. 216, 221 (C.M.A.1986) (burden of proof).

Thus, an accused's access to his constitutional right to confront a witness depends in part on the enthusiasm with which his antagonist seeks that witness' attendance at trial. The burden on the prosecution to show that it has done a good job is predictably heavy, and unavailability must be "clearly established." *United States v. Hubbard*, 28 M.J. 27, 31 (C.M.A.1989), *cert. denied*, 493 U.S. 847, 110 S.Ct. 142, 107 L.Ed.2d 101 (1989).

It is sometimes said that the question is whether the prosecution has made (and, on appeal, can show that it made) good faith efforts to produce the witness, *e.g. Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), but that simply states the matter in shorthand. Were "good faith" the end of the test, bumbling and fruitless efforts by a well-intended but inept prosecution would be enough to deprive one of a constitutional right. Instead, one must ask further whether "the Government has exhausted every reasonable means to secure [the witness'] live testimony." *United States v. Burns*, 27 M.J. 92, 97 (C.M.A.1988).[4]

 Here, the husband's summary of the witness' sentiments about returning for the trial were accepted without verification at trial.[5] The prosecution exhausted all but the most obvious step of all—asking

---

**3.** *See, e.g., United States v. Santiago–Davila*, 26 M.J. 380 (C.M.A.1988) (videotape deposition); *United States v. Cordero*, 22 M.J. 216 (C.M.A. 1986) (statement given to investigators). *Cf. United States v. Ferdinand*, 29 M.J. 164 (C.M.A. 1989), *cert. denied*, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990).

**4.** This is not a new standard. Twenty years ago we said that, before Article 32 testimony can be used in lieu of personal appearance, the prosecution must show that *"all* available means, compulsory or voluntary, for obtaining the presence of the witness *were tried* and proved fruitless." *United States v. Bieniek*, 43 C.M.R. 954 (A.F.C.M.R.1971) (emphasis added). *Bieniek* simply summarized prior decisions. Of course, we recognize that the United States lacked subpoena power over Imelda while she was in the

Philippines, but that fact does not alone establish unavailability. *United States v. Crockett*, 21 M.J. 423, 427 (C.M.A.1986), *cert. denied*, 479 U.S. 835, 107 S.Ct. 130, 93 L.Ed.2d 74 (1986). Some measure of what is meant by reasonable efforts is supplied by the 162–page annotation, *Sufficiency of Efforts to Procure Missing Witness' Attendance to Justify Admission of His Former Testimony—State Cases*, 3 A.L.R.4th 87 (1981).

**5.** The record reports the statement of one of the Clark paralegals that on an earlier occasion, the middle trial date, Imelda refused. Unfortunately, little use can be made of such a barren report. Even if it were taken as true, it says nothing of Imelda's disposition toward return on the later date now relevant. That puts it in the same category as the stale facts in *United States v. Cokeley*, 22 M.J. 225 (C.M.A.1986).

the witness—even though it apparently knew her location.

Furthermore, the husband's reply was inconsistent with Imelda's prior conduct. She had alleged that she had been beaten by appellant during their affair, and that seems to have been the occasion for her report that he used drugs. She had a stake in the prosecution, so much so that she had already returned once from the Philippines to testify in this case and had declared that she would return again to "finish what she had started." She was obviously not intimidated by an international trip to California, and she had testified once already during the deposition, showing no more anxiety about that experience than is typical. Nothing in this record explains why she would not have returned willingly to testify or shows that it would have been futile to ask her. *Contrast United States v. Hampton,* 33 M.J. 21 (C.M.A.1991); *United States v. Minaya,* 30 M.J. 1179 (A.F.C.M.R.1990). The record is inadequate to show that the United States "exhausted every reasonable means."

We hold that it is an abuse of discretion to determine that an adult, competent witness, previously cooperative even though beyond the subpoena power of the United States, is unavailable without some showing that agents of the prosecution have made, or tried diligently to make, direct contact with the witness to determine the witness' disposition, unless the record shows special circumstances or that such an effort would have been futile. *Cf. United States v. Burns,* 27 M.J. at 97. One discussion with a third party, even the witness' spouse, is not enough when the witness has previously been cooperative, there is no showing that the third party was authorized to speak for the witness, and there is no showing that the witness could not have spoken for herself. The deposition should not have been admitted on the merits.

## II. Effect of the Deposition

■ Having found error, we must test for prejudice. Article 59(a), UCMJ, 10 U.S.C. sec. 859(a) (1988). We must reverse the affected convictions unless we can find the error to have been harmless beyond a reasonable doubt, because the issue involves a constitutional right. *United States v. Vanderwier,* 25 M.J. 263, 267 (C.M.A.1987). "The relevant inquiry 'is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *United States v. Batten,* 31 M.J. 205, 211 (C.M.A.1990), quoting *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Having been compelled to ascend one steep standard—abuse of discretion—we now are propelled quickly down its equally steep back slope.

■ The evidence in this case was in a delicate state.[6] Though appellant confessed, he later recanted his confession, saying

---

6. As we considered the state of the evidence, we assumed for the sake of analysis that appellant's confession was properly in evidence on the merits. That puts the prosecution's case in its strongest position before we consider whether the deposition was harmless.

Thus, we assume without deciding that the confession, which faced no other objection, was properly corroborated by the *in*admissible deposition, as a preliminary matter handled under Mil.R.Evid. 104(a), 104(c), and 304(g)(2) solely as an issue of law for the military judge. *See, United States v. Matlock,* 415 U.S. 164, 172–77, 94 S.Ct. 988, 993–96, 39 L.Ed.2d 242 (1974) (rules of evidence on preliminary issues decided by judges); *United States v. Raddatz,* 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980) (repeating *Matlock* idea); *United States v. Martindale,* 30 M.J. 172 (C.M.A.1990) (appearing to apply the distinction); *United States v. Yanez,* 16 M.J. 782, 783–84 (A.C.M.R.1983), *pet. denied,* 18 M.J. 292 (C.M.A.1984) (collecting cases and explaining Mil.R.Evid. 104(a) and *Matlock* idea); *United States v. Dababneh,* 28 M.J. 929, 934 (N.M.C.M.R.1989) (explaining Mil.R.Evid. 104(a)); *cf. See also, Bourjaily v. United States,* 483 U.S. 171, 178, 107 S.Ct. 2775, 2780, 97 L.Ed.2d 144 (1987) (applying Fed.R.Evid. 104(a)); *United States v. Stricklin,* 20 U.S.C.M.A. 609, 44 C.M.R. 39 (1971) (applying *Matlock* idea); *United States v. Rounds,* 30 M.J. 76, 81 and n. 3 (C.M.A.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990) (same); annotation, *Admissibility of Hearsay Evidence for Court's Determination, Under Rule 104(a) of the Federal Rules of Evidence, of Preliminary Question of Fact,* 39 A.L.R.Fed. 720 (1978). *But contrast* Fed.R.Evid. 1101(d) *with* Mil.R.Evid. 1101(d)(1).

We further assume that having once been corroborated to the satisfaction of the military judge, a confession may be admitted into evidence before the trier of fact and that the extent

that he had given it to induce Imelda to return and "straighten all this out." Bizarre as it is, that defense was consistent with their equally bizarre prior relationship and with their respective states of mental ill health. Without the deposition, a trier of fact "might have" concluded that the proof of guilt did not meet the reasonable doubt standard. The deposition "might have" been the evidence that persuaded the military judge to believe the appellant's confession, not his recantation. We cannot conclude that admitting the deposition was harmless beyond a reasonable doubt.

The effect of the deposition falls equally on both of the specifications of which appellant was convicted. Accordingly, all the findings of guilty and the sentence are set aside. A rehearing is authorized. *See* R.C.M. 1107(e)(1).

Senior Judge LEONARD and Judge RIVES concur.

---

to which the prosecution produces the same or different corroborating evidence on the merits for the trier of fact is solely a question of tactics within the proponent's discretion. *See, United States v. Harjak,* 33 M.J. 577, 585–88 (N.M.C.M.R.1991) (Lawrence, J., concurring and dissenting).